GASPARD CARRIE et al., caveators, plaintiffs in error, vs. HENRY H. CUMMING, and another, propounders, defendants in error.

[1.] In cases of caveat of the probate of a will, the will and the allegations, if any, in support of it, and the caveat, or allegations against it, constitute the pleadings, and they ought to be submitted to the jury as making the issue between the parties. The reading of the will to the jury is no evidence of its validity.

[2.] A will written by an executor, who is also a principal legatee, ought not to be established without proof of instructions or knowledge of contents by the testator.

[3.] General reputation is inadmissible to prove that persons live in a state of concubinage.

[4.] A will is lawful or unlawful according to the act and intention of the testator, and its character in that respect does not depend on the object or purpose of the legatee in respect to the property bequeathed to him.

[5.] If the presiding Judge who certifies a bill of exceptions, annexes a note thereto explanatory of the ground of exception, the note must be taken in connection with the exception, in determining thereon.

Caveat to will, in Richmond Superior Court. Tried before Judge HOLT, at May Term, 1858. Appeal from Ordinary.

The propounders offered for probate a paper, purporting to be the last will and testament of John Carrie, deceased, late of the county of Richmond, of which the following is a copy:

STATE OF GEORGIA, Richmond County:

I, John Carrie, of said county and State, being of sound and disposing mind and memory, do make, ordain and publish this writing as and for my last will and testament, hereby revoking all wills heretofore made by me.

*First :* To my friends Louis Alexander Dugas and Henry H. Cumming, of the city of Augusta, and the survivor of them, I give, bequeath and devise all my estate, both real, personal and mixed, wheresoever situated, and of what kind soever the same may be, charged only with the payment of my just debts, funeral expenses, and other legal charges on the same, which I desire them to pay off in full as soon as possible after my decease.

*Second :* I nominate, constitute and appoint the said Louis Alexander Dugas and Henry H. Cumming, and the survivor of them, executors and executor of this will, and it is my will that they and the survivor of them be fully empowered at their or his discretion, and without reference to the Court of Ordinary or any other Court, to sell and dispose of the whole of my estate, in such manner, at such time and place, on such notice and such terms, as they in their discretion may deem expedient.

In witness whereof, I, the said John Carrie, have hereunto set my hand and seal, this sixteenth day of November, in the year of our Lord eighteen hundred and forty-seven.

his

JOHN ⋈ CARRIE.

mark.

Signed, sealed, published and declared by the above named John Carrie, to be his last will and testament, in the presence of us, who have hereunto subscribed our names as witnesses, at the request of said testator and in his presence, and in the presence of each other this 16th day of November, Anno Domini, 1847. 'H. BIGNON,

G. T. DORTIC,

GEO. G. McWHORTER.

The probate of said paper as the last will and. testament of John Carrie, deceased, was resisted by the Caveators, who filled the following grounds of Caveat:

1st. Because the said John Carrie was not of sound and disposing mind and memory at the time of the execution and publication of said alleged will.

2d. Because the same was not executed in the manner and form required by the statute in such case made and provided.

3d. Because of undue, illegal and improper influence, used and exercised by one Mary Bouyer, a free person of color, over the said John Carrie.

4th. Because said alleged will is violative of the provisions of the Acts of the General Assembly of the State of Georgia, in relation to manumission of slaves, and dispositions of real estate and slaves to free persons of color.

5th. Because said alleged will is against the settled policy of the State of Georgia, in relation to slaves and free persons of color, in this, that it is an attempt, by a secret trust, to maintain the slaves of the deceased.

6th. Because said alleged will is against the same policy, in this, that it is an attempt, by a secret trust, to secure to Mary Bouyer, a free person of color, the beneficial interest in slaves and real estate, lying in the city of Augusta.

7th. Because said alleged will does not express the intention of the said John Carrie, as to the ultimate disposition of his property.

8th. The paper, propounded as the last will and testament of John Carrie, is null and void, for that the said John Carrie made and executed the same for the purpose of effecting or endeavoring to effect the manumission of a slave named or usually called Mary Bouyer, by conferring or attempting to confer freedom upon her, and by allowing and securing and attempting to secure and allow to said slave the right or privilege of working for herself, free from the control of the

master or owner of said slave, and of enjoying the profits of her own labor and skill.

The evidence having been concluded, and the case argued by counsel, the Court was requested by the propounders to charge as follows:

That to constitute a secret trust in devisees of land or legatees of slaves, there must have been some contract, agreement or stipulation, written or parol, between them and the testator.

That the mere expectation or hope of a testator, that his legatee would dispose of the property given, in a manner not set forth in the will, creates no trust in the legatee.

That the intention of the legatees, as to the disposition they will make of their interest in the estate, cannot affect the construction of the will.

That, to render a trust, express or implied, in favor of a free person of color, obnoxious to the provisions of the Act of 1818, the interest, intended to be secured, must be an interest in the land and slaves themselves.

That the 8th section of the Act of 1818 does not apply to any trust for the benefit of slaves.

That it is competent to a testator, in bequeathing a slave, to make an express provision for the kind treatment of such slave, and that such a bequest and provision do not amount to manumission, nor are they vitiated by a gift of other property therewith; and that a parol request for such kind treatment made prior to, simultaneously with, or after the execution of the will, cannot invalidate it.

All which charges were given by the Court to the jury, as requested by propounders; and counsel for the caveators then excepted and now except to each and all said charges as given.

The counsel for the caveators requested the Court in writing to charge the jury as follows:

I₁ the draftsman of a will take a considerable interest under it, the transaction will be viewed with extreme jealousy, and the jury must, in such case, be satisfied that the testator knew the contents of the will..

Courts will look with suspicion upon testaments of this character. The presumption is strong against an act done by the agency of the party to be benefited, especially where the capacity of the testator, at the time the will was executed, is in any degree doubtful. The Courts will not presume fraud, but they will, under such circumstances, require strong proof of intention.

All and every will, testament and deed, whether by way of trust or otherwise, contract, agreement or stipulation, or other instrument in writing, or by parol, made and executed for the purpose of effecting or endeavoring to effect the manumission of any slave or slaves, either directly by conferring or attempting to confer freedom on such slave or slaves, or indirectly, or virtually, by allowing and securing, or attempting to allow and secure to such slave or slaves the right or privilege of working for his, her, or themselves, free from the control of the master or owner of such slave or slaves, or of enjoying the profits of his, her, or their labor or skill, are utterly null and void.

No free person of color can be permitted to purchase or acquire any real estate, lying in the city of Augusta, or any slave or slaves, either by a direct conveyance to such free person of color of the legal title of such real estate, or slave or slaves, or by any conveyance to any white person or persons of such legal title, reserving to such free person of color the beneficial interests therein, by any trust, either written or parol, by any will, testament, or deed, or by any contract, agreement, or stipulation, either written or parol, and securing or attempting to secure to such free person of color, the legal title, or equitable or beneficial interest therein.

Any such trust may be shown by parol testimony.

No special words are required for the creation of a trust.

Any words or acts, going to show a design on the part of John Carrie that the property conveyed to the legatees named in his will, should be held by them for the benefit of another person, will create a trust.

If the jury believe that by the will offered in evidence, John Carrie *attempted* or *endeavored* to do any act prohibited by the Act of 1818, already cited, the will is void, notwithstanding the attempt may not have been successful, and notwithstanding the legatees, H. H. Cumming and L. A. Dugas, knew not of such attempt or endeavor. Their knowledge of the illegal attempt is not necessary to render void the instrument by which such illegal attempt was to be executed.

A trust *may* be created without the knowledge of the trustee ; such want of knowledge on the part of the trustee does not prevent the *creation*, or the *attempt* to create the trust.

The legatees, in this case, cannot take any property for Mary Bouyer, whether slave or free, which she herself could not take.

If the jury believe that Mary Buoyer is a slave, and if they find that she was in the possession and under the control of John Carrie, he exercising acts of ownership over her, for more than four years prior to the date of the alleged will, the legal presumption is that she was his slave at that time.

All which charges were given by the Court to the Jury, as requested by the caveators. After reading them to the jury, and charging them as law, the Court concluded his charge to the jury with the remark: " But, gentlemen of the jury, the question in this case for your consideration and determination is, is this the last will and testament of John Carrie ? If it be, you must establish it by your verdict. If it be not, you must find against the will." And to this concluding part of the charge, counsel for the caveators excepted.

In a note by Judge HALL, appended to his certificate, he remarks : " I do not remember the precise words with which

the charge to the jury was concluded, but I am certain none were used to retract or vary in the slightest degree, the principles or statements of law given in the charge to them."

MILLERS & JACKSON, for plaintiffs in error.

CHARLES J. JENKINS, contra.

By the Court.—McDONALD J. delivering the opinion.

The case presented in this record, arises on the will of John Carrie. Upon the face of the will, there is nothing which excites suspicion of either the capacity of the testator, fraud, or undue influence in its procurement, of the legality of its provisions or the regularity of its execution. It is caveated, however, and the allegations against it are all matters, which depend for support on extrinsic evidence. The grounds of caveat will be found in the Reporter's statement of the case.

[1.] The subscribing witnesses were introduced, who proved the execution of the will. After this proof, the will was offered in evidence by the propounders, and the caveators objected, upon the ground, that its execution according to law, had not been proven, and because of the circumstances of suspicion developed by the testimony. The Court overruled the objection and the caveators excepted.

This Court here announced, that it had already decided that a contested will should be submitted to the jury as the subject to which the evidence was to apply; and thereupon this assignment of error was not further insisted upon. The will and allegations, if any, in support of it; and the caveat or allegations against it, constitute the pleadings in such cases, and ought, in the outset, to be placed before the jury. This proceeding imparts no validity to the will. Lucas vs. Parsons, et al. 24 Ga. Rep. 640.

[2.] One of the circumstances of suspicion developed by the testimony, relied on to exclude the will from the consideration of the jury was, that it was written by one of the execu-

tors, who was also a principal legatee, and there was no evidence that the testator knew its contents. The objection would certainly have been a good one, if the paper had been admitted in evidence as a *valid* will, for no evidence had been offered that the testator had given instructions for it, and that it was written in accordance with those instructions; or that he had read it; or that it had been read to him; or that he had knowledge of its contents. Without such evidence the jury would not have been warranted in setting up the paper as a will, but this evidence was subsequently supplied. The want of it at the time the paper was offered, was no objection to its being submitted to the jury, as the subject to which the whole evidence was to apply. Indeed, as already remarked, the proper time to have read it was at the opening of the case.

[3.] The caveators proposed to prove by general reputation, that John Carrie, the testator, and Mary Bouyer, who was a woman of color, lived together in a state of concubinage, he keeping her as his mistress. The Court below rejected the evidence, and his decision is excepted to. Independent of other objections, the relevancy of this testimony is not very apparent, as the case stands in this record. We can conceive circumstances, which, if they existed, and were proven, might entitle the proof proposed to be made, to much consideration in trying some of the issues made by the caveat. But there is a total absence of proof of the sort to which I allude. But under no circumstances and in no connection can the fact that persons lived together in a state of concubinage be proven by general reputation.

[4.] Col. Henry H. Cumming was introduced as a witness by the caveators for the purpose of establishing the 4th, 5th, 6th, or 8th ground of caveat, or perhaps all of them. Col. Cumming was one of the executors of the will, and also a legatee. While under examination he was asked by the caveators, what was his intention as to the disposition of any property which he might receive under the will of Mr

Carrie?   And if he intended to use the same for the benefit of Mary Bouyer, was not that intention based upon, or did it not grow out of the known wishes of Mr. Carrie, upon that subject?   The counsel for the propounders objected to the questions and answers thereto.   The Court sustained the objection and the counsel for the caveators excepted.

If an affirmative answer had been given to both questions, it does not follow that the will would have been obnoxious to any of the objections urged against it.   The terms of the will are unambiguous and positive.   There is no trust created thereby, for any person or any object whatever.   There are no instructions to the executors.   The questions propounded do not imply a conditional bequest or an *undertaking* on the part of the executors or legatees, to hold the property in trust for any object.   It was the testator's intention, and not the legatees, which would vitiate the will, if its objects were illegal.   But the witness under examination was one of the propounders of the will.   He proposed to carry it into effect, and if it contemplated a violation of the laws of the State, he, accepting the legacy for an illegal object, would have been subject to penalties for engaging in, or contributing to the illegal purpose.   He could not be compelled to answer.   But if the testator knew that he could not, either directly or indirectly, according to the laws of the land, provide by will or otherwise, for the manumission of slaves, or make testamentary dispositions of real estate and slaves to free persons of color; or attempt by a secret trust to manumit slaves; or attempt by a secret trust, in his will, to secure to a free person of color the beneficial interest in slaves and real estate lying in Augusta, and he made a will, however much he may have desired it, with no such purpose, but bequeathed his entire estate to friends, with no injunctions whatever so to appropriate his property, or as to its ultimate destination, it cannot invalidate the will, if the legatees, knowing his strong desire, but being under no obligation of any sort to execute it, of their own volition, give

the property in that way, or use it for those objects. It is their own property, and if they so apply it, they lay themselves liable to the penalties of the law, and are subject to punishment without reference to the source whence the property was derived.

After the testimony was delivered to the jury the counsel for the propounders submitted to the Court in writing, six requests to charge the jury, which were all given, by the Court. The counsel for caveators excepted to the several charges so given. The requests will be found in the Reporter's statement of the case. The first request is in accordance with the law. " To constitute a secret trust in devisees of land or legatees of slaves, there must have been some contract, agreement or stipulation, written or parol, between them and the testator." What kind of evidence is sufficient to establish such contract, agreement or stipulation is not a proper subject of investigation here. If a legacy be given in the will coupled with a trust of any sort given unknown to the legatee, his acceptance of the legacy, perfects a stipulation or agreement to carry out the trust, which before acceptace was in the nature of a proposition by the testator. A proposition of this sort, for an object in contravention of the statute, would be an *attempt*, under the Act, and would vitiate the will. There is no proof of such thing before us.

We understand the second request to have been made in reference to the evidence in this cause, and not to a case in which the expression of an expectation or hope of a testator, is considered as equivalent to directions which are obligatory. The request as asked literally, is the law; for an absolute bequest of property carries to the legatee the power and right of the legatee to dispose of it as he pleases, uncontrolled by the verbal expression of the hope or expectation of the testator.

The third, fourth and fifth instructions asked, it is sufficient to say, are unquestionably legal.

Making the same remark in reference to the sixth request

made, I will add that it is not only legal, but commendable for the owner of a slave, in bequeathing her, to provide for her kind treatment, which amounts to nothing more than that while she is required to perform the service of a slave, she shall be comfortably clothed and suitably fed, that excessive labor shall not be required of her, that she shall not be unnecessarily and unreasonably chastised, and that, when sick, she shall have the nursing and medical attention which her situation requires.   The law imposes these duties on all owners of slaves, and it cannot be an objection to a will that the testator who bestows his bounty on a friend, should ask or require of that friend the performance towards the slaves he gives, of the *legal* duties of humanity.

The counsel for the caveators asked the presiding Judge to give in charge to the jury ten different instructions, which he did.   These are not excepted to of course, by the plaintiff in error.   We are not therefore called on to review them, or to determine whether they are all sustained by the law, as applicable to the case before us.

[5.] The last part of the charge of the Court, stated in the bill of exceptions, taken alone and disconnected from the rest, is certainly erroneous; but the presiding Judge annexes a certificate, which must be taken in connection with it, that he does not recollect the precise words, with which the charge to the jury was concluded, but he is certain none were used to retract or vary in the slightest degree the principles or statements of law given in charge to them.   This being so, the conclusion of the charge as stated in the bill of exceptions must be taken in connection with the charges founded on the objections to the probate of the will and taken with them, there is nothing in it to disapprove.

Judgment affirmed.