| 41 | 197 |
|----|-----|
| 61 | 209 |
| 41 | 197 |
| 64 | 157 |
| 41 | 197 |
| 66 | 499 |
| 41 | 197 |
| 77 | 616 |

## FRANCES C. DOWD *vs.* JOSEPH H. TUCKER.

An aunt of the respondent, with whom she lived and to whom by her will she had given all her property, upon her death-bed desired to change her will and give a certain piece of real estate to a niece, and had a codicil prepared for that purpose. Before signing the codicil she wished to secure the consent of the respondent to the change and had him called in for the purpose. After hearing her he replied that she was weak and that she need not trouble herself to sign the codicil, but that he would deed the property to the niece and carry out her wishes. Trusting in his promise, she did not change her will. After her death the respondent refused to convey to the niece. On a bill in equity brought by her to compel him to convey, it was held that he took the property under a trust for her, which a court of equity would enforce.

And held too that the case was one of fraud, it being clearly inferable from his refusal to convey after the death of the testatrix that he made his promise to her with an intention not to perform it.

The procuring of property upon a promise which the party at the time does not intend to perform, is a fraud. And it makes no difference whether the property is real or personal.

BILL IN EQUITY to compel the conveyance of real estate; brought to the Superior Court in Middlesex County. The following facts were found by a committee.

The petitioner, who is poor, is a niece, and the respondent, who is in comfortable circumstances, is a nephew, of Frances M. Hayden, who died Sept. 3d, 1870.

On the 27th day of May, 1863, Mrs. Hayden made a will, by which she gave all her property to the respondent, which will, after her death, was proved as her last will and testament.

At the time of her death she was the owner of one half of a dwelling house and lot, worth $750, being the property in dispute between the parties. She also owned other property, and left an estate, real and personal, after paying all charges, amounting to $2,640. From 1863 to the time of her death, she was an inmate, most of the time, of the respondent's family. But she was not a pecuniary burden to him. At times, especially when ill, she went to her own house, (which was in the same yard with the respondent's,) and was cared for to some extent by the petitioner and her mother. For such services during her last sickness the petitioner has been allowed her claim by the commissioners on the estate, as hereinafter stated.

About two weeks before her death Mrs. Hayden desired and intended to give to the petitioner her part of the dwelling house, and to change her will accordingly, but was unwilling to do so without the consent of the respondent. The petitioner thereupon caused a codicil to be prepared giving to the petitioner the dwelling house. This codicil was presented to her, upon which she, without signing it, expressed a desire to see the respondent. The respondent was then called into the room, and she informed him that she wanted to give her half of the dwelling house to the petitioner, if he was willing, and asked him if he was willing, saying again that she wanted to do so. The respondent replied that she was weak, and that

she need not trouble herself to sign the paper, but that he would deed the property to the petitioner, and would do just as she wanted to have him. The testatrix expressed herself satisfied that the respondent would do as he agreed, and did not sign the codicil. This interview was on Sunday, about 2 o'clock in the afternoon. Mrs. Hayden was at that time capable of making a will.

The respondent was the executor of her will, and as such represented her estate to be insolvent, and it was settled as an insolvent estate.

The petitioner presented to the commissioners on the estate a claim for $1,300. It was a part of her claim that she should be allowed a sum equal to the value of the dwelling house, on the ground of an alleged promise by Mrs. Hayden that she would give it to her. This claim was rejected by the commissioners on the ground that it was not within their jurisdiction. But they allowed the sum of $150 for services in taking care of the deceased during her last sickness. The sum thus allowed was about $65 more than the services were worth; but the commissioners allowed it in consideration of the circumstances and condition of the parties, hoping thereby to avoid litigation.

After the death of Mrs. Hayden the petitioner demanded of the respondent that he should execute to her a deed of the premises in question; but he refused, and has ever since refused to do so. The respondent is now in possession of the property, claiming it as his own, and denying that the petitioner has any rights or interest therein.

Upon these facts the case was reserved for the advice of this court.

*Chadwick*, for the petitioner.

1. The respondent holds the property as trustee for the petitioner. One who fraudulently procures a bequest to be made to him by a promise as to the use of the legacy, will be held a trustee for such use. *Church* v. *Ruland*, 64 Penn. S. R., 432; 1 Story Eq. Jur., §§ 252, 256; 2 id., § 781; 1 Jarman on Wills, 356. And it makes no difference in prin-

ciple whether one procures a bequest to be made to him, or whether, a bequest having been made to him, he prevents, by a promise, the execution of a codicil giving the property to another. In equity, fraud includes all acts, omissions and concealments by which an undue and unconscientious advantage is taken of another. *Story* v. *Norwich & Worcester R. R. Co.*, 24 Conn., 113. If a committee without expressly finding fraud, report facts from which an inference of fraud is unavoidably made, the court will treat the transaction as fraudulent. *Ibid.* The rule is, that when the facts are ascertained by the report of a committee, the existence of legal fraud is a question of law on facts and intents. *Pettibone* v. *Stevens*, 15 Conn., 26 ; *Brainerd* v. *Brainerd*, id., 576 ; *Lavette* v. *Sage*, 29 id., 588. The facts found in this case show a clear case of fraud.

2. But if there was no fraud, there was a trust. Property given to one person to be delivered to another, is held by him in trust. 2 Story Eq. Jur., §§ 1041, 1196, 1197, 1201. And land conveyed by deed or any instrument for the benefit of a third person, is held in trust. Such trust may be proved by parol and equity will enforce it. *Crocker* v. *Higgins*, 7 Conn., 342; *Parsons* v. *Camp*, 11 id., 528; *Baxter* v. *Gay*, 14 id., 119 ; *Church* v. *Sterling*, 16 id., 388 ; *Collins* v. *Tillou*, 26 id., 375.

3. A person for whose benefit an agreement is made, though not a party to the agreement, may maintain a suit in chancery for its specific performance. *Crocker* v. *Higgins*, 7 Conn., 342.

4. As to the claim before the commissioners of $1,300. This claim was presented by the petitioner upon a mistaken idea as to her legal rights. The claim was based for its full amount on the intention of the testatrix to give her the house. The commissioners correctly decided that the matter was not within their jurisdiction. They did allow her, for her services during the last sickness of the testatrix, $150, and that was about $65 more than her services were worth. As the petitioner has never yet received the $150, the court may order as a matter of equity that the sum of $65 be deducted from it.

5. As to the desire and intention of the testatrix to give this property to the petitioner.—She was under no pecuniary or other obligation to the respondent. Her devise to him was purely voluntary. If she was under obligation to any one it was to the petitioner, who had cared for her in her days of sickness. Her intention to give the property to the petitioner was not dependent on the assent of the respondent, but as she had made a will devising all her property to him, and as she wished to continue on pleasant terms with him, she was unwilling to make a change without first notifying him, and having him assent to it in her presence, so that there would be no secrecy about it, and no cause for unpleasant feeling. The committee does not find that she would not have done it if the respondent had refused his assent. If he had she then would undoubtedly have asserted her rights and made the change. But if it was dependent on his assent, he explicitly assented, and made the crafty suggestion that as she was feeble she need not sign the codicil, and that he would give the petitioner a deed of the property after her death, and would do just as the testatrix desired to have him. This certainly constituted full assent.

*Culver* and *Warner*, for the respondent.

The petition proceeds upon the ground that the statute which requires wills to be in writing, would have been complied with, but for the promise of the respondent to deed the property to the petitioner. We admit that, in cases of *fraud*, equity will relieve against the express words of the statute. But to constitute such fraud there must be deceit or misrepresentation, by means of which the respondent obtained the devise, which would otherwise have gone to the petitioner. It must be deceit or misrepresentation, as distinguished from a mere breach of promise, however wrongful. 2 Lead. Cas. in Equity, 708; *Montacute* v. *Maxwell*, 1 P. Wms., 618; 2 Story Eq. Jur., § 781; *Church* v. *Ruland*, 64 Penn. S. R., 432. It is found that "about two weeks before her death, Mrs. Hayden desired and intended to give to the petitioner her part of the dwelling house, and to change her will

accordingly, but was unwilling to do so without the consent of the respondent." Thus it is plain that the *intention* and *desire* of the deceased were conditioned upon the *consent* of the respondent. The respondent's will must have concurred with the will of the deceased. If he was willing, she was; but not otherwise. We submit that it does not appear expressly, nor by inference, that the respondent expressed his willingness to have the *testatrix* give the property to the petitioner in *any* mode. If he had been willing, or intended to have his aunt so understand, he would naturally have said "yes" in answer to her direct question, or language equivalent. He was under no legal or moral obligation to express his consent. It is clear she would not have made the change proposed without first being assured that he was willing. He was just as nearly related to her as the petitioner. She had chosen to give the property to him at a time when she was in possession of all her mental and physical faculties, and it does not appear that any thing had occurred to change her mind. It is obvious that the petitioner had importuned the deceased to change her will, and had ascertained that she would not do it without the consent of the respondent. The court will notice that the *petitioner*, not the *deceased*, caused the codicil to be prepared. It does not appear that the deceased knew any thing of it till it was presented to her Sunday afternoon, about two weeks before her death. It would be absurd to claim that the facts show that she had made up her mind to execute a codicil whether the respondent was willing or not, and merely wanted to have him present at the execution to avoid any unpleasantness. It would be equally absurd to claim that the respondent gave his consent to have her change her will, or expressed his willingness, by saying, in reply to her enquiry whether he was willing, "that she was weak, and that she need not trouble herself to sign the paper, and that he would deed the property to the petitioner, and would do just as she wanted to have him." "Would do," had reference to the *future*, not to the then *present*. It does not appear that she said anything to him about changing her will, nor that he knew

she had made a will. Neither does it appear that he knew whether the "paper" was a deed or a codicil; nothing appears to have been said about it in his presence. Where a trust is sought to be enforced on the ground of fraud, the fraud should be distinctly alleged and clearly proved. Browne on Stat. of Frauds, § 94. It is elementary law that fraud is never presumed, the presumption being always against bad faith. *English* v. *Stewart*, 6 Ind., 176; 2 Swift Dig., 49. For aught that appears, the respondent made the promise to deed in good faith. He may have good reasons for not deeding. He thinks he has; reasons which absolve him from all moral obligation to deed. This is unlike the cases cited in the books, where devisees were held to be trustees. 1 Story Eq. Jur., § 781; Browne on Stat. of Frauds, §§ 94, 444, 445a, 446; Perry on Trusts, § 181; *Church* v. *Ruland*, 64 Penn. S. R., 432. It is found that the petitioner has been allowed $65 more than her services were really worth. She has therefore no equity. She at first makes claim for $1,300 before the commissioners. Failing there to get as much as the value of the property, she brings this petition, which is manifestly an after-thought. If she can recover in this case, the statute requiring devises to be in writing is of no avail, and wills, years after their execution, may be changed by parol.

PARK, C. J. This case is clearly one of fraud. We have held on the present circuit (*Ayres* v. *French*, ante, page 142,) in accordance with numerous decisions, that whosoever buys personal property with a preconceived intention not to pay for it, is guilty of fraud. This case is similar in principle. It matters but little whether the property is real or personal estate. Whosoever buys real estate with a preconceived secret intention not to pay for it, but to cheat the grantor out of it, is as much guilty of fraud as he would be if the property was personal estate. Apply this principle to the case we have in hand. The property in controversy belonged to Frances M. Hayden, and while it was yet hers to be disposed of as she pleased, she informed the respondent that she desired to give

it to the petitioner if he was willing, and asked him if he was willing, again expressing her desire so to give it. A codicil to her will had been at this time prepared and lay before her ready to be executed. The respondent knew by the inquiry and by the preparation what her purpose was. She had previously, by a duly executed will, given all her property to the respondent. He knew now that she had changed her mind, and was about to give the real estate in question in legal form to the petitioner, but that she desired his consent to the change, if it could be obtained. He immediately resorted to deception. He substantially expressed his entire assent to the change, but suggested the mode in which it would best be accomplished in her weak condition. He said in effect, let me take the property, as you have already willed it to me, and when it comes into my hands I will deed it to the petitioner, and in that way your present desire with regard to the disposition of the property will be carried out, as much as it would be by executing the codicil ; therefore in your weak condition do not trouble yourself about it. She was satisfied that the petitioner would have the property in the way proposed, and so expressed herself, and consequently the codicil was left unexecuted ; or, in other words, she let him have the property on his promise to convey it to the petitioner.

. Now it is a presumption of law that a party intends to do what in fact he does ; and the fact appearing in the case that after the property came into the hands of the respondent, he at all times absolutely refused to convey it to the petitioner, it must be that during some period of time previous to his first refusal he must have so intended ; and inasmuch as there is nothing in the case which goes to show a different intention at any previous time, it is reasonable to presume that this intention existed during the short period of time that had intervened since the promise was made, and existed at the time it was made ; from which it follows that the promise was made in bad faith, with the dishonest intention to do what he afterwards did. If this was so, then the case is clearly one of fraud. It is the case of one obtaining the conveyance

of property by a promise, which he has no intention at the time to fulfill.

But it is unnecessary to pursue this question of fraud, for the case otherwise is palpably one where the respondent holds the property in trust for the petitioner, whether he made the promise in good or bad faith. If A, knowing that B is about to convey certain real estate to C, which the latter has purchased of him, should say to B, " Convey the property to me and I will convey it to C," and B should accede to the request, and convey the property to A, no one would question but that A would hold the property in trust for C. Is this case any different in principle? Mrs. Hayden was on the point of giving this property to the petitioner by the execution of a codicil to her will, which had been prepared. The respondent knowing the fact, said to her in effect, " Let me have the property by the will you have already executed and I will convey it to the petitioner." The respondent by this promise obtained the property. It would seem that no argument need be made to show that he holds it in trust.

But it is said that she did not intend to execute the codicil unless the respondent was willing that she should do so. We do not so understand the report of the committee. But grant that it was so; did he not in the plainest and most unmistakable language give her to understand that he was willing? What did she desire to have done? She wanted the petitioner to have the property. What request did she make of the respondent? She asked him if he was willing that the petitioner should have it. Whether the conveyance was to be made in one form or another was of no consequence, and formed no part of the substance of the inquiry, although he took it for granted that she intended to do it by executing the codicil that lay before her, which was in fact her intention. What reply did he make? He said that she was weak, that she need not trouble herself to sign the paper, (meaning the codicil,) that he would deed the property to the petitioner, and would do just as she wanted to have him; that is, I will do just what you ask my consent to have done; therefore do not trouble yourself in your weak condition to exe-

cute the codicil. If this language does not convey a consent that the petitioner should have the property, then language in any form of words would fail to express the idea.

It follows therefore that the respondent obtained the property in question by his promise to convey the same to the petitioner, and consequently we think he is bound in equity and good conscience to make the conveyance.

We advise the Superior Court to grant the prayer of the petition.

In this opinion the other judges concurred.