Williams *v.* Vreeland.

---

## SARAH A. WILLIAMS and others
### *v.*
## CORNELIUS VREELAND and others.

The evidence showed that Cornelius Vreeland, in consideration of a legacy of $30,000 to him, promised the testator verbally to give complainants $10,000 thereof; that Vreeland, after testator's death, admitted the trust orally, and, also, executed a written promise to that effect, without any deceit or misrepresentation.—*Held,* that specific performance of such promise would be decreed, notwithstanding a subsequent retraction of the written promise.

---

NOTE.—The following cases show under what circumstances courts will enforce parol promises, made by legatees to testators, to influence gifts to themselves:

In *Rookwood's Case, Cro. Eliz. 164 (1590),* a father intended to charge his lands with £4 per annum for each of his two youngest sons, but

Williams *v.* Vreeland.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. W. H. Vredenburgh,* for complainants.

*Mr. B. A. Vail,* for defendants.

The Chancellor.

The complainants (who are the children of Eliza Saunier, deceased), seek, by this suit, to recover $10,000, and interest thereon, from the defendants, part of the amount of a legacy of $30,000 given by Henry Frost, deceased, late of Richmond county, Staten Island, their great-uncle, to his nephew (their uncle), Cornelius Vreeland, now deceased, by his will, dated November 20th, 1870.

Henry Frost died in May, 1875, and his will was admitted to probate on the 21st of September following.    It declares no trust as to the legacy of $30,000, but simply gives it to Cornelius Vreeland.    The language is : "I give and bequeath to my nephew, Cornelius C. Vreeland, $30,000."    The complainants allege that $10,000 of the amount of it was given

the eldest promised, if he would forbear, to pay them, to which the younger sons agreed.—*Held,* that assumpsit was well brought.

In *Dutton* v. *Poole, Ventr. 318, 2 Lev. 210, T. Jones 102 (1678),* the father of the plaintiff's wife being seized of a wood, which he intended to sell to raise portions for younger children, the defendant being his heir, promised the father, in consideration of his forbearing to sell it, to pay plaintiff's wife £1,000.    *Held,* that assumpsit would lie.

In *Thynn* v. *Thynn, 1 Vern. 296 (1684),* a son, by deceitfully promising his mother that he would hold the executorship of his father's estate in trust for her, procured his father to alter his will and thereby remove his mother and substitute himself.—*Held,* that equity would enforce the trust.

In *Devenish* v. *Baines, Finch 4 (1689),* a copy-holder, intending to leave to his godson the greater part of his copy-hold, his wife persuaded him, on promising to carry out his wishes, to leave it all to her.—*Held,* that she was a trustee for the godson's portion.

In *Sellac* v. *Harris, 2 Eq. Cas. Abr. 46, 5 Vin. Abr. 521 ¿ 31 (1709),* a father purchased lands with his second son's money, and, on his death-bed, obtained from his eldest son a promise to convey them to the second son.—*Held,* enforceable.

In *Chamberlain* v. *Chamberlain, 2 Eq. Cas. Abr. 43, 2 Freem. 34 (1678),* a father being about to alter his will, for fear there should not be assets sufficient to pay all of the legacies thereby given, his heir and also

Williams *v.* Vreeland.

to the legatee in trust for them, and on a promise on his part to the testator, that if the latter would give him a legacy of $30,000, he would pay over $10,000 of the amount to the children of his (the legatee's) sister, Eliza Saunier.

Where a testator, in confidence in the parol promise of another, to pay money out of a legacy to be given to him by the will, makes the bequest, and omits to make the provision for the payment directly to the person to whom it is to be made, the legatee will be held, in equity, to perform his promise, and will be held to be a trustee for the person to whom the payment is to be made, to the amount of the payment. *Story's Eq. Jur.* § 781; *Chamberlain* v. *Agar, 2 Ves. & B. 259; Church* v. *Ruland, 64 Pa. St. 432.*

Said Lord Eldon, in *Strickland* v. *Aldridge, 9 Ves. 516*: "If a father devises to his youngest son, who promises that if the estate is devised to him, he will pay £10,000 to the eldest son, this court will compel the former to discover whether that passed in parol; and, if he acknowledged it, even praying the benefit of the statute, he would be a trustee to the value of the £10,000."

executor, promised him, if he would not alter it, to pay the legacies.— *Held,* that whatever be the amount of the assets, the son was liable.

In *Oldham* v. *Litchford, 2 Freem. 284, 2 Vern. 506 (1705)*, a testator was inserting in his will an annuity of £40, when testator's brother requested that it be omitted, and said, *as he was a Christian,* he would take care to see it paid.—*Held,* that the brother should pay it. See *Jones* v. *Nabbs, 1 Eq. Cas. Abr. 404 (1718)*.

In *Drakeford* v. *Wilks, 3 Atk. 539 (1747)*, a testatrix had given a bond to the plaintiff; afterwards, she gave it, by a new will, to A. W., on her promising to give it to plaintiff at her own death.—*Held,* that evidence of A. W.'s declarations, after the will had been made, were admissible, and that plaintiff could recover the bond from A. W.'s representatives.

In *Reech* v. *Kenningale, 1 Wils. 227, 1 Ves. Sr. 124, Amb. 67 (1748)*, a testator was about to alter his will and leave his nephew £100; whereupon his executor told him he need not alter it, for that he would pay the nephew the £100, which, after testator's death, he refused to do.— *Held,* that the nephew was entitled to relief on the ground of fraud. Also, *Marriot* v. *Marriot, 1 Str. 666 (1726); Chamberlain* v. *Agar, 2 Ves. & B. 259 (1813)*.

In *Barrow* v. *Greenough, 3 Ves. 152 (1796)*, a testator, after having given a legacy to his sister, desired to add more thereto, and his executor told him that he would pay her such additional amount, and

Williams v. Vreeland.

In the case in hand, Sarah Ann Williams, one of the complainants, after the testator's death, and six days before the will was offered for probate, having been informed by the executor that the testator had told him that he had left to Cornelius Vreeland $30,000, of which $10,000 were intended for the complainants, and that Vreeland had promised the testator to pay that money to them, went to Vreeland, and, stating to him what the executor had told her, asked him if he had made such a promise to the testator, to which he replied that he "once did." She thereupon asked him if he would put the promise in writing, to which he replied in the affirmative, and thereupon the following paper was drawn, which was signed by him:

"PROSPECT PLAINS, Sept. 1st, 1875.

"I do hereby certify that if I receive $30,000 from the estate of Henry Frost, I will pay to the children of my sister Eliza the sum of $10,000.

CORNELIUS VREELAND."

He delivered this paper to Mrs. Williams. On the 14th of the same month of September, he signed another paper, a copy of which was served on Mrs. Williams on the 16th,

that it was unnecessary for testator to make a new will to effect his purpose.—*Held*, that the executor could be compelled to do so. See *Byrn* v. *Godfrey*, 4 Ves. 10 (*1798*); *Mestaer* v. *Gillespie*, 11 Ves. 638 (*1806*); *Dixon* v. *Olmius*, 1 Cox 414 (*1787*).

In *Podmore* v. *Gunning*, 5 Sim. 485 (*1832*), 7 Sim. 644 (*1836*), natural children of the testator alleged that his wife had promised, in consideration of his giving her the whole estate, to leave it to them at her death.—*Held*, to establish a trust in favor of complainants. See *Ex parte Fearon*, 5 Ves. 633.

In *Bulkley* v. *Wilford*, 2 Cl. & Fin. 177, 8 Bligh 111 (*1834*), after a testator had made his will, leaving certain of his lands to his wife, his heir presumptive, who was a *lawyer*, advised him to have a fine levied on those lands, concealing from him the fact that such fine, which was afterwards levied, operated as a revocation of the will.—*Held*, that the heir held as trustee for the widow. See *Segrave* v. *Kirwan*, *Beat.* 157 (*1828*); *Nanney* v. *Williams*, 22 Beav. 452 (*1856*); *Paine* v. *Hall*, 18 Ves. 475 (*1812*); *Hooker* v. *Axford*, 33 Mich. 453 (*1876*); *Corley* v. *Stafford*, 1 DeG. & J. 238 (*1857*); *Popham* v. *Brooke*, 4 Russ. 8; *Dent* v. *Bennett*, 4 Myl. & Cr. 270; *St. Leger's Case*, 34 Conn. 434; *Hindson* v. *Weatherill*, 5 DeG. M. & G. 301 (*1854*); *Walker* v. *Smith*, 29 Beav. 394 (*1861*); *Carrie* v. *Cumming*, 26 Ga. 691 (*1859*); *Riddell* v. *Johnson*, 26 Gratt. 152 (*1875*).

In *Chester* v. *Urwick*, 23 Beav. 407 (*1856*), a sister wrote thus to her brother: "As you have kindly promised, if I do not make my will, my

and on another of the complainants (Michael Saunier) on the 24th of September. The paper was as follows:

"To Sarah Ann Williams and others, heirs at law of Eliza Saunier, deceased:

"Please take notice that I utterly disavow the paper heretofore signed by me, giving a certain interest in the legacy bequeathed to me in and by the last will and testament of Henry Frost, late of Richmond county, deceased, to the heirs at law of Eliza Saunier, deceased. You will further take notice that I hereby decline to carry the same into effect, and will refuse, and hereby refuse, to pay any portion of said legacy to either or any of the heirs at law of said Eliza Saunier, deceased, and do hereby forbid the executors, appointed or to be appointed in the matter of said will, to pay any portion of said legacy so bequeathed to me, by any pretended authority given by me, in said paper above mentioned, and I hereby demand that said paper be delivered to me.

"September 14th, 1875.                        CORNELIUS VREELAND."

On the 15th of the same month of September, Vreeland assigned to one of his sons the legacy of $30,000, in trust, to divide it equally among Vreeland's children, including the trustee. The will was admitted to probate in the latter

---

wishes shall be fulfilled, &c.," and then specified how she desired her property distributed. She died intestate, and her brother was her heir. The evidence as to the brother ever having seen the writing, or having afterwards promised to carry out his sister's request, was conflicting.—*Held*, insufficient to charge him.

In *Norris* v. *Fraser*, *L. R.* (*15 Eq.*) *318* (*1872*), a testator gave a residue in trust, to pay the income to a married woman. It was proved that such woman promised (and her husband assented) the testator to give N. an annuity for life, in consideration of such residuary gift.—*Held*, that the income of the residuary gift was liable for N.'s annuity.

In *Johnson* v. *Ball*, *2 DeG. & Sm. 85* (*1851*), a testator gave a policy of assurance to two trustees, "to hold the same upon uses appointed by letter signed by them and myself." No such letter then existed, but the testator had previously asked the trustees, and they had consented, to accept the bequest for the benefit of certain persons whom he long afterwards specified in a letter to the trustees. He also signed an unattested memorandum to the same effect.—*Held*, invalid as a will, or as a gift *inter vivos*.

In *Hoge* v. *Hoge*, *1 Watts 163* (*1832*), a testator remarked to the scrivener, that as regards the devise to his brother John, it was a trust, and that he had no other way of doing it: he must leave it entirely to John's honor. John afterwards told the scrivener that it was intended for

part of the same month.    Vreeland died December 9th,
1877, about two years afterwards.

Cornelius Vreeland was undoubtedly of sound mind when
he made the admission and signed the paper of the 1st of
September.    It appears, by the testimony of all the wit-
nesses, that, although he was an aged man, he fully com-
prehended the business in which he was engaged, and
understood his rights and recognized his duty therein.
According to the testimony of John Garabrant, his son-in-
law, sworn for the defendants, when Mrs. Williams, on that
occasion, asked him if he did not think the $10,000 of which
she was speaking, part of the legacy of $30,000, was meant
for the complainants, he answered, "I don't know; maybe
he did mean so."    She then asked him if he would be will-
ing to give a paper to the effect that he was to give them
$10,000, to which he replied, "No; I won't give you $10,000
of my money; I don't know whether I am going to get any
myself."    She then said, "If you get $30,000, will you give
us the $10,000?" and he responded, "Yes, if I get it."

It appears, by the testimony of Mr. Edsall, who went with

---

young William, an illegitimate son.—*Held,* that William could recover
thereon.

In *Gaullaher* v. *Gaullaher, 5 Watts 200 (1836),* a testator designed to
give plaintiff a legacy of $5,000, but when his will was written it was
agreed between the testator and residuary legatee, in the presence of
the scrivener, that the legacy should be omitted, and in lieu thereof
the residuary legatee should give his own notes to the plaintiff for the
$5,000, which he did subsequently.—*Held,* that the residuary legatee's
administrators were liable on such notes.

In *Jones* v. *McKee, 3 Pa. St. 496 (1846), 6 Pa. St. 425 (1847),* a mother
gave lands equally to her son and daughter.    The son, being financially
involved, persuaded his mother to give all the lands, by codicil, to his
sister, who would hold one-half of such devise in trust for him, to
which she, when interrogated by her mother, assented, and the codicil
was so drawn.—*Held,* that the sister was a trustee for her brother as to
one-half of the lands, and, also, that subsequent parol admissions of
the sister and her husband were admissible to establish the trust.

In *Church* v. *Ruland, 64 Pa. St. 432 (1870),* a devise to one on a parol
promise to leave it to others specified, after her death, is binding and
enforceable after the death of the devisee without carrying out her
promise.

In *Browne* v. *Browne, 1 Harr. & Johns. 430 (1803),* a father devised all
of his lands to his eldest son, on a parol promise that if certain lands

Williams v. Vreeland.

Mrs. Williams to Vreeland's on that occasion, that Vreeland readily acknowledged that he had once promised the testator to give the complainants $10,000 out of the legacy of $30,000, and he as readily consented to sign a paper to evidence his promise; that he said he could not draw the paper, and thereupon Mrs. Williams said that Mr. Edsall would do it. Mr. Garabrant then suggested that Vreeland's son Cornelius had better be consulted, as he was in the habit of doing his father's business, but the suggestion seems to have had no weight with Vreeland. Mrs. Garabrant, Vreeland's daughter, then asked him if she should get paper, to which Vreeland replied, "Yes." Edsall then asked him if it was his request that he should draw the paper, and Vreeland said "Yes." Mrs. Garabrant then brought paper and ink, and Edsall drew the paper. He says Vreeland then immediately signed it. He says he thinks he read it to Vreeland. He further says that Vreeland, on being asked if he was content with what he had done, said he was satisfied.

A few days after this transaction, Mr. Dey spoke to Vree-

---

should afterwards be devised to such son by a third person, as was expected, he would turn over testator's lands to his younger brothers. —*Held*, enforceable, after such son received the other devise.

In *Owing's Case, 1 Bland 370 (1826)*, a brother declared his intention to devise his estate to his sister, whereupon his mother dissuaded him, promising that if he would leave his estate to another sister, she (the mother) would provide for the first intended devisee, and corroborated her intentions by promises after testator's death.—*Held*, that she was liable.

In *Gaither* v. *Gaither, 3 Md. Ch. 158 (1851)*, a testator was about to devise lands to two grandsons equally, when their father said to testator that they were young and unable to take care of it, and that if testator would give it to him he would transfer it to them when capable of managing it, or at his death, which testator did. The father afterwards conveyed the lands to his three daughters, and died intestate. Relief was refused on the ground of laches.

In *McLellan* v. *McLean, 2 Head 684 (1859)*, a testator, who had no children, gave all his estate to his wife, on her verbal promise to divide it by her will equally among his and her relatives.—*Held*, enforceable after her death and disposition of the property in a different manner.

In *Williams* v. *Fitch, 18 N. Y. 546 (1859)*, an aunt promised, if plaintiff's father would not bequeath $2,000 to plaintiff, but give it to her

Williams *v.* Vreeland.

land o'n the subject, saying that he had seen what he (Vree-land) had done [he had seen the paper of September 1st], and thought it was a generous act, and that he deserved credit, as it seemed that, by the will, he had the thing in his own hands, and that it had saved the complainants a great deal of uneasiness and trouble, and that he supposed the thing was then fixed up, and he added, "I don't suppose that you thought you were giving $10,000 of your money to them," to which Vreeland replied, "No," that the reason why he did it was that he thought that his uncle Harry (the testator) intended that he should do so. Subsequently, after the paper of the 14th of September (the notice of retraction) had been served, Vreeland told Mr. Dey that his boys had objected to the written promise he had given, and to Mrs. Dey he said that his family would not permit him to perform the promise he had made.

The testator had confidence in Vreeland. The latter visited him and transacted some of his business for him. The testimony of persons not parties to the suit, leaving out of consideration all the rest of the testimony, establishes the

instead, to hold the same, with the accumulations, for plaintiff's ben-efit.—*Held,* to constitute a trust in favor of plaintiff.

In *Dowd* v. *Tucker, 41 Conn. 197 (1874), 23 Am. Law Reg. 477,* after a testatrix had given all of her estate to the defendant, she changed her mind, and wanted to so alter her will as to give a portion to plaintiff, whereupon defendant said to her: "You are weak, and need not exe-cute a codicil in order to give plaintiff what you desire; let the will stand, and I will transfer plaintiff's share to him."—*Held,* that defend-ant was a trustee for so much as testatrix had intended to give plaintiff.

In *Hooker* v. *Axford, 33 Mich. 454 (1876),* by advice of an attorney, a married woman's lands were devised to the attorney and another person on a parol promise of the attorney to hold such lands for the benefit of her husband. The attorney admitted the trust, and was willing to convey his moiety to the husband; his co-tenant denied it.— *Held,* that the co-tenant was also a trustee, the husband having been in possession for several years, although the husband was the only wit-ness to prove the trust.

In *Brook* v. *Chappell, 34 Wis. 405 (1874),* a testator who had given his whole estate to James, believing himself *in extremis,* called James to his bedside, and, in the presence of several witnesses, told him there were several persons to whom he wished to give something, and directed James to write them down, naming them, which he thereupon did, and finally charged James to carry out those directions as faithfully as the

Williams v. Vreeland.

fact that Vreeland admitted that the legacy of $30,000 was $10,000 more than he had expected to receive from the testator, and that he had promised the latter to pay $10,000 to the complainants. His assignment of the legacy to his son, in trust for his family, seems to have been means taken by the family to defeat the claim of the complainants. There is no evidence of deceit in the transaction which resulted in the written promise. There was no secrecy nor any concealment. What was said and done took place in the presence of Vreeland's daughter and her husband. Vreeland's action in making the admission and the promise in writing, was entirely voluntary. The promise is, under the circumstances, evidence of a trust.

In *Rutledge* v. *Smith, 1 McCord 69*, a testator, after having made a will, by which he made a very minute distribution of his estate among his family, which was numerous, and in which distribution he gave a legacy of £300 to each of his grandchildren, subsequently revoked the will by another, by which he gave all his estate absolutely to his wife. She, after his death, executed and delivered an acknowledgment

---

ones contained in the will, to which request James made no response, or, perhaps, said "well."—*Held*, that James was chargeable with the payment of the sums mentioned. See *Richardson* v. *Adams, 10 Yerg. 273 (1837)*.

In *De Laurencel* v. *De Boom, 48 Cal. 581 (1874)*, a testator gave all of his property to his nephew absolutely. On the same day, he wrote a letter to the nephew, explaining how he desired him to distribute the property, which letter the nephew endorsed with an acknowledgment of its binding effect upon him, and signed it.—*Held*, sufficient to render him liable to the persons named in the letter as *cestuis que trust*. See *Proby* v. *Landor, 28 Beav. 504 (1860)*; *McCormick* v. *Grogan, L. R. (4 H. of L.) 82 (1869)*; *Kingsbury* v. *Burnside, 58 Ill. 310 (1871)*.

In *Williams's Appeal, 73 Pa. St. 249 (1873)*, a testator gave his whole estate to his executor in trust, to select and purchase a lot in P., thereon to erect a building, &c. He afterwards purchased a lot himself, and directed that the building should be put thereon, and verbally requested his executor to so carry out his wishes, which the executor promised to do.—*Held*, binding on the executor.

In *Bedilian* v. *Seaton, 3 Wall. Jr. 279 (1860)*, an intestate requested two friends to come from a distance and draw his will, intending to devise all of his property to a natural and only child. Before his friends arrived, he grew worse, and being very anxious to have the will drawn, called his two brothers, his heirs at law, to his side, stating

Williams *v.* Vreeland.

in writing to one of his grandsons, by which she declared that there was due to him the sum of 1,367*l.* 18*s.* on account of the legacies left him by his grandfather (the testator), and promised that the same, together with the interest to grow due thereon from the day of the date of the paper, should be paid to him by her executors, out of whatsoever estate she should die possessed of or be entitled unto, in preference to any other claim thereon, within one year after the day of her death, unless it should be previously paid by her. Commenting on the instrument, the court said that it was not, to be sure, a declaration in so many words, that she was a trustee, but it was an acknowledgment of facts which admitted of no other conclusion.

In the present case Vreeland acknowledged that he had promised the testator that he would pay over $10,000 of the $30,000 legacy to the complainants, and expressly in view of that promise, and to furnish them with evidence of it which should be binding on him, he gave them the agreement in writing to pay them the money. There was no other consideration for the promise than the trust, and

to them his desire that his child should have his estate. They assured him, in the presence of witnesses, that the child should have every cent of it. No will was made, being prevented by his death shortly afterwards.—*Held,* a mere parol promise by heirs, on whom the law casts the descent, and that the evidence did not amount to a *prevention* of decedent's making a will.

In *Sword* v. *Adams, 3 Yeates 34* (*1800*), a devise was made to M., her heirs and assigns. M. died in testatrix's life-time.—*Held,* that her grandson was not entitled under "her heirs and assigns," notwithstanding D., who had a contingent interest in one-ninth of the premises by marriage, had assured the testatrix otherwise, and thereby prevented her changing her will in favor of such grandson.

A promise made by one who takes no benefit under a will, by which promise the testator is induced to give a legatee less than he intended, is *nudum pactum*. *Robinson* v. *Denson, 3 Head 395* (*1859*); *Mercier* v. *Mercier, 50 Ga. 546* (*1874*); *Proby* v. *Landor, 28 Beav. 504* (*1860*); see *Ridley* v. *Ridley, 11 Jur.* (*N. S.*) *475* (*1865*); *Auding* v. *Davis, 38 Miss. 574* (*1860*); *Johnson* v. *Hubbell, 2 Stock. 332* (*1855*); *Ackerman* v. *Ackerman, 9 C. E. Gr. 585* (*1874*); *Heustis* v. *Rivers, 103 Mass. 398* (*1869*).

Unless the evidence be clear and satisfactory, both as to the promise and the intended fraud upon the beneficiary, courts will not interfere. *Sims* v. *Walker, 8 Humph. 503* (*1847*); *Whitridge* v. *Parkhurst, 20 Md. 62* (*1862*); *Collins* v. *Hope, 20 Ohio 492* (*1852*); *Lomax* v. *Ripley, 3 Sm. &*

Williams v. Vreeland.

none other is alleged, and it is admitted that it was based on the allegation that the trust existed. It may be added, that after that paper had been delivered, the witness (Mr. Edsall) bore to Vreeland a message from the executor, which he delivered. It was this : That the executor (De Frost) requested Edsall to tell Mr. Vreeland that $10,000 of the $30,000 were intended for his (Vreeland's) sister Eliza's children; that he (the executor), in an interview with the testator, had called his attention particularly to that clause in the will relating to that legacy, and had said that as it was written the executors would be obliged to pay it to him (Vreeland), and that he had urged the testator to make it plain; that the testator replied that Vreeland understood it, and had promised to pay it to the children of Eliza, and that the testator had said he was not afraid to trust Vreeland; that he believed him to be an honest man. To this message Vreeland made no reply whatever. This message appears to have been delivered in January, 1876, some months after the retraction had been signed and served.

Mr. Vreeland did not deny that he had made the promise to the testator. It may be remarked, that in the retraction he did not deny that he made it to the testator, nor did he claim that the paper had been obtained through deceit. He merely disavows it, and gives notice that he declines to carry it into effect, and refuses to pay any part of the legacy to Eliza Saunier's children, and forbids the executors to pay

---

*Giff. 48 (1854)*; *Jones* v. *Badley, L. R. (3 Ch. App.) 362*; *Rowbotham* v. *Dunnett, L. R. (8 Ch. Div.) 430 (1878).*

Nor, where the trust contains any illegal provision. *Mickleston* v. *Brown, 6 Ves. 51 (1801)*; *Stickland* v. *Aldridge, 9 Ves. 515 (1804)*; *Paine* v. *Hall, 18 Ves. 475 (1812)*; *Russell* v. *Jackson, 9 Hare 386, 10 Hare 198 (1852)*; *Wallgrave* v. *Tebbs, 2 K. & J. 313 (1855)*; *Tee* v. *Ferris, 2 K. & J. 357 (1856)*; *Ford* v. *Dangerfield, 8 Rich. Eq. 95 (1856)*; *Carrie* v. *Cumming, 26 Ga. 690 (1859).*

In *Spicer* v. *Spicer, 16 Abb. Pr. (N. S.) 112 (1873)*, a man living with a woman under color of a void marriage, was about to devise his property to her, when his brother induced him to convey the property to him (the brother), on a promise that he would pay the woman an amount equal to her dower, at her husband's death.—*Held*, that the brother was estopped from denying the validity of the marriage, and that the widow could recover.—Rep.

any part of the legacy to them under the authority of the paper, and demands that the paper be delivered up to him..

The trustee and *cestuis que trust* under the assignment are volunteers, and in fact took the assignment with full knowledge of the claim of the complainants.

There will be a decree for the complainants.