(40 Misc. Rep. 360.)

JONES v. JONES.

(Supreme Court, Special Term, Fulton County. March, 1903.)

1. DEED—ACTION TO SET ASIDE—FRAUD.

Where a man living apart from his wife sues to set aside certain deeds made to her, and alleges that she, to induce him to make the conveyances, falsely promised to return and live with him during the rest of his life, and that in reliance on such promises he made the conveyances, and that she did not keep such promises, and never intended to keep them, states a good cause of action for setting aside the conveyances for fraud.

Action by Edward Jones against Laura E. Jones to set aside certain deeds which plaintiff was induced to make to defendant, his wife, on her promise to return and live with him during the remainder of his life, on the ground that the promise was made with intent to defraud. Demurrer to complaint. Overruled.

'Charles P. Coyle, for plaintiff.
-Harry T. Dayton (Albert H. Clark, of counsel), for defendant.

SPENCER, J. The defendant has attempted by this transaction to make merchandise of her marital relations. According to the fundamental principles of that relation, it is the right of the husband to fix, and his duty to maintain, the matrimonial domicile; and it is the right of the wife to be supported by her husband therein, and her duty to give to her husband the benefit of her society, and to render such service in the care of the home as shall be in keeping with their station in life; and any agreement which attempts to alter these rights and duties, or to rest them upon any other foundation, is illegal and void. The encouragement of marriage has always been a matter of deep public concern, and it has come to be the universal rule that all contracts in restraint thereof, or for the procurement or facilitating of divorce, are against public policy. An exception, however, exists where the parties have separated, and the husband has made provision by deed for the separate support of the wife. In those cases contracts to convey property have been upheld, where the same were fair and equitable. But I do not think the conveyances here are within that exception. They were not made for the wife's support, and the only consideration therefor is the agreement on the part of the wife to cohabit with the husband— a duty which she assumed by virtue of her marriage. The law will not uphold, nor the courts tolerate, such agreements.

But the ground for relief alleged by the plaintiff in his complaint is that the conveyances in question are tainted with fraud, in that he was induced to execute the same by reason of a false promise made to him by the defendant, and which promise she at the time intended not to perform. We are thus brought face to face with the question whether a promise so made, with intention not to perform, and by which a party has been led to part with his property, will amount to fraud, and afford ground for annulling the conveyance. The question is not free from doubt. I am referred to no decision in this state in which it has been discussed, and none has fallen under my observation. There are a number of decisions in other states, but they are not harmonious. Their line of cleavage seems to spring out of the question whether a purchase of goods by an insolvent with the preconceived intention not to pay constitutes fraud. Wherever that doctrine has been held, it seems to have been followed to its logical conclusion, to the effect that a promise made by one, and acted upon by another, accompanied by an intention of the promisor not to perform, is such a false representation as to constitute fraud.

The Pennsylvania courts are at variance with both propositions. Thus, in Backentoss v. Speicher, 31 Pa. 324–326, it is said:

"Where there is a sale of goods, and delivery of possession, even though the buyer intends at the time not to pay for them, and conceals his insolvency from the vendor, it is not a cheat that will avoid the sale. There must be artifice practiced, such as was intended and fitted to deceive, to constitute a cheat. This is not the doctrine, I know, of the New York courts. There it is held that a purchase of goods, with the intention not to pay for

them, does not divest the vendor's title—a rule which has not been permitted to displace ours."

The court, in making this decision, relied upon its former decision in Smith v. Smith, 21 Pa. 367–370, 60 Am. Dec. 51, where it was said:

"An intention not to pay is dishonest, but it is not fraudulent. It is no more fraudulent to have such an intention at the time of the purchase than at the time when payment ought to be made."

I think the argument is elliptical, upon which these decisions rest. It overlooks the factor that the promise which deceived the seller and became the inducing cause of the sale was infected by a corrupt intention, which made the transaction dishonest on the part of the purchaser, whereas the corrupt intention subsequently conceived in no way entered into the transaction, and does not relate back to and make dishonest that which was honest.

The principle involved seems to be more clearly apprehended in two Connecticut cases, namely, Dowd v. Tucker, 41 Conn. 197–203, and Ayres v. French, Id. 142, where, in the latter case, the court say:

"It is the dishonesty of making the false promises in furtherance of the scheme of fraud that is the basis of the action. It would seem that if a man is guilty of fraud in the purchase of goods when he has a secret intention not to pay for them, much more is he guilty of fraud if, after he devises a scheme for getting possession of the property of another without buying it and appropriating it to his own use, he goes deliberately at work to carry his scheme into execution by making promises with the intention at the time not to fulfill them. Where lies the fraud in buying goods with an intention not to pay for them? It lies in the fact that the fraudulent purchaser gives the seller to understand that his intention is to pay for them. His deceit, therefore, is in his statement with regard to his intention."

The courts of New Hampshire are in harmony with this view, and apply it to a promise made to induce a sale. Thus in Goodwin v. Horne, 60 N. H. 485, the court say:

"Ordinarily false promises are not fraudulent, nor evidence of fraud; and only false representations of past or existing facts are actionable, or can be made the ground of defense. But when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense."

This doctrine is clearly announced and ably supported in the case of Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, where the court say:

"Ordinarily promises to perform some act, although made by one party as a representation to induce the other to enter into a contract, will not amount to fraud, in legal acceptation, although subsequently and without excuse broken. But our courts have recognized an exception, expressed with reference to this case, as follows: 'If the railway company at the time it made the representation and promises did so with the design of cheating and defrauding the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses to induce the plaintiffs to execute the deed, and if their conduct did have this effect, then such declaration, coupled with its subsequent refusal to perform the promises, would amount to such actual fraud as would authorize the plaintiffs to have the contract rescinded, and the land restored to them.'"

I am therefore of the opinion that the weight of authority is upon the side of the plaintiff's contention, and that the defendant's promise,

accompanied by an intention on her part not to perform, constituted fraud; he having parted with his property in reliance thereon. While none of the courts of this state has, so far as I know, adopted the proposition here stated, nevertheless the Court of Appeals, by a number of decisions on cognate questions, has indicated pretty clearly that such will be its decision in an appropriate case. Thus in Hennequin v. Naylor, 24 N. Y. 139, it was held that the omission of a purchaser of goods for credit to disclose his insolvency is not necessarily fraudulent, yet, if the purchase be made with a preconceived design not to pay, it is fraud; and in Devoe v. Brandt, 53 N. Y. 462, it was held that fraud in the purchase of goods may be based as well upon a suppression of the truth as upon false representations; and in Hotchkin v. Third Nat. Bank, 127 N. Y. 329–338, 27 N. E. 1050, 1051, the court say, per Brown, J.:

"If a purchaser who is insolvent conceals that fact from the vendor for the purpose of defrauding him, and thus obtains goods without intending to pay for them, the title of the property is not changed, and it may be reclaimed by the vendor."

All these cases go upon the theory of the illegal intent of the purchaser at the time of the transaction.

Wherever the courts, in defining fraud, have gone to the extent thus reached by our Court of Appeals, they have, I think, followed the doctrine to its legitimate and necessary conclusion, viz., that a promise made to do an act in the future to induce another to part with his property, and which promise does in fact accomplish its purpose, accompanied by a present intention by the promisor not to perform, constitutes actionable fraud. In the purchase of goods without intending to pay, the fraud does not arise from the fact that the promise is not kept, but from the fact that it was made for the purpose of defrauding, and with an intention not to perform, and that the other party is led to believe that it is made for ordinary business purposes, whereas in fact it is made for the sole purpose of defrauding.

In the case at bar, the plaintiff was, by the defendant's promise, deceived into believing that the defendant entertained kindly feelings, or at least good will, towards himself as her husband, whereas, in fact, her state of·mind was quite.the reverse; she having no intention of performing her marital duties; her mind being filled with a treacherous and evil design. A person should not be at liberty to misrepresent the condition of his mind in order to defraud another of his property, any more than he should be permitted to misrepresent the condition of his estate for the same purpose.

A further question is raised to the effect that Dennis Pratt, the person through whom the title to the premises passed on its way to the defendant, is a necessary party. I do not concur in this contention. Dennis Pratt is not charged with being a party to the fraudulent scheme. He was simply the conduit through which the title passed from the plaintiff to the defendant. He has no interest in the controversy or in the property. No relief is asked as against him. The fact that the prayer of the complaint asks to set aside the deed from the plaintiff to Pratt, as well as the deed from Pratt to the defendant, is of no consequence, as any appropriate relief under the prayer may be

granted; and whether that relief be to set aside the deeds, or to declare them null and void, is immaterial. The demurrer is therefore overruled, with costs, with leave to answer over on usual terms.

Demurrer overruled, with costs, with leave to answer over on usual terms.