Yearance *v.* Powell.

*For reversal*—DEPUE, DIXON, GUMMERE, VAN SYCKEL, HENDRICKSON, NIXON—6.

---

LILLIE E. YEARANCE, appellant,

*v.*

ANNA POWELL, respondent.

1. A father *in extremis*, being about to execute a will making his three children his residuary devisees, stayed such execution in order to add a bequest to another person.    One of the children, without the knowledge of the others, assured him that if he should execute the will without change, his wish with regard to the intended bequest would be fulfilled.    On this assurance he did so execute the document.—*Held*, that the share in the estate of the child giving the assurance must contribute a third only toward making good the intended bequest.

2. *Quære.* Can like contribution be compelled from the shares of the other children?

---

On appeal from a decree advised by Vice-Chancellor Reed.

*Mr. Howard W. Hayes,* for the appellant.

*Mr. Frederic W. Ward,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

In 1855, George D. Randell, of Newark, took into his family the respondent, who was the motherless niece of his wife. She was then about fifteen years of age. She had outside employment and paid board at a low rate. About 1862, Mrs. Randell died, leaving two children—Lillie E., aged eight years, and Frederick L., aged four years. At Mr. Randell's request, the respondent abandoned her employment and took charge of the children. She received no stated wages and paid no board. In 1867, she married, but remained in the household until the next year, when Mr. Randell married the second time. Her relations with the family continued close, and in times of sickness she was called in to assist. One child, Edith, was born of Mr. Randell's second marriage, in the year 1869. Even she seems accustomed to call the respondent "Aunt Anna," and in the light of the relations of the parties the occurrences at Mr. Randell's deathbed, hereafter to be stated, seem very natural.

In March, 1889, Mr. Randell was stricken with a fatal illness, and essayed to make his will. He was then a widower, with the same three children. Lillie had been married. Her married name is Yearance. She is and was then childless. Frederick was married, and had and still has infant children. Edith was a girl of twenty. She has married pending this litigation. Her married name is Hopping. A draft for a will had been prepared for Mr. Randell in the lifetime of his wife, but he had never executed it. He gave instructions to counsel to prepare a redraft, simply omitting the provisions in favor of his deceased wife, and to bring it to him at once for execution. Counsel presented such redraft at his bedside the same evening. By its terms, after giving the use of his residence to Lillie and Edith, at their option, the entire estate was, with the intervention of trustees, to go to the three children in equal parts. Lillie was to take an estate for life, with remainder to her issue, or, in default of issue, to Edith and to Frederick's children. Frederick was to take an estate for life, no provision being made for

remainder, and Edith was to take an absolute estate on reaching the age of twenty-four years. Pending the preparation of the will, Mr. Randell determined to bestow something upon Mrs. Powell, and, when the draft was brought to him, he asked to have added a clause devising to her a house and lot on Brunswick street, in the rear of his residence. He had already conveyed that property to Mrs. Yearance, and, on being reminded of that fact, which had escaped his enfeebled memory, he directed that the clause in Mrs. Powell's favor should take the form of a money bequest of $4,500, fixed by him as the equivalent in value of the property. Counsel was about to redraw the will, but the attending physician expressed the opinion that there ought to be no delay. Mrs. Yearance was the only one of the testator's children present. She at once said, "Papa, that will be all right; just as you wish," and Mr. Randell responded, "All right; if that is so, I will execute the will as it is," and he did so execute it. He died in the afternoon of the next day.

Mrs. Yearance has always been ready to carry out her father's wish, either by permitting $4,500 to be paid to Mrs. Powell from the residuary personalty of his estate or by conveying to her the Brunswick street property, on receiving $1,500 from each of the shares thereof bequeathed to her brother and sister respectively. The matter was held in abeyance until Edith should reach the age of twenty-four years. When that time arrived Edith made her consent to any settlement dependent on Frederick's concurrence, and he refused to have his share of the estate in any way diminished. In this posture of affairs Mrs. Powell filed her bill against the trustees of the will, the three children of the testator and the children of Frederick L. Randell. The bill prays decree for the payment by the trustees of $4,500 from the testator's residuary estate. The decree made charges the whole $4,500 on Mrs. Yearance alone, giving her the option to convey the Brunswick street property instead of paying that sum. From this decree she has appealed, making the complainant the sole respondent.

The principle recognized by this court in *Williams* v. *Vreeland,* *5 Stew. Eq. 734,* and the precedents therein approved warrant a

Yearance *v.* Powell.

decree in Mrs. Powell's favor, but not the one made. It is not necessary to recite the testimony in the case. It is well summarized by the vice-chancellor, and we differ in but one respect from his conclusion on the facts. We think that the testator could not have supposed that Mrs. Yearance meant to agree that his wishes should be fulfilled, even if it were necessary to that end that the whole of the bequest he contemplated should have to come from her share of his estate. He accepted her assurance as binding the three devisees and remaindermen, and not herself alone. The decree is wrong to the extent that it charges her with more than her share of the $4,500.

We have not considered the very interesting question of the right to compel payment of the residue of the intended bequest from the shares represented by Mrs. Hopping and Frederick L. Randell. The learned vice-chancellor assumes that this is impossible, in the absence of promises by them respectively. There are decisions holding otherwise in cases like the present. They proceed on the theory that one of several devisees of a class represents all, and that where a testator executes his will on the faith of a promise that some trust will be performed, made by one of the class in behalf of all, it is fraud for the others to claim the devise without sharing its burdens. We are precluded from examining and determining the question because the other devisees are not before this court on the appeal of Mrs. Yearance. Should the court of chancery adhere to the view of the vice-chancellor, the question may be presented by Mrs. Powell by appeal.

The present decree must be reversed and a decree must be made in conformity with this opinion, so far as the respective rights of appellant and respondent are concerned.

*For reversal*—THE CHIEF-JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LUDLOW, VAN SYCKEL, DAYTON, HENDRICKSON, NIXON—11.

*For affirmance*—None.