9 Buch.                      Aumack v. Jackson.

---

LUELLA AUMACK et al., respondents,

v.

W. SCOTT JACKSON, executor, et al., appellants.

[Argued July 6th, 1911.   Decided March 4th, 1912.]

In order to establish a parol trust against a legatee, which equity will enforce on account of the legatee's fraud, the evidence must be clear and satisfactory. The evidence in this case falls short of that standard.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Walker, whose opinion is reported in 78 N. J. Eq. (8 Buch.) 189.

Mr. Edmund Wilson, attorney-general, and Mr. Aaron E. Johnston, for the respondents.

Mr. William H. Corbin and Mr. Foster M. Voorhees (Mr. Isaac W. Carmichael, on the brief), for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The object of this bill is to enforce a parol trust. The theory of the complainants is that Louise C. Aumack, wife of Selah S. Aumack, induced her husband to devise and bequeath all his property to her upon her promise to distribute it, after her death, among his next of kin, the complainants in the cause. The law is settled by the decision of this court in *Williams* v. *Vreeland*, *32 N. J. Eq.* (*5 Stew.*) *734.* Equity will enforce a parol promise made by a legatee to a testator to hold the legacy for the benefit of a third person where the conduct of the legatee amounts to a fraud. This case therefore involves a decision upon the facts only. The rule of evidence was thus stated by Mr. Justice Van Syckel: "Courts of equity act in these cases with the utmost caution, and they will not interfere, unless the promise and the intended fraud on the beneficiary are established by clear and satisfactory proof." In that case it was proved by the express written declaration of the legatee. It is most important to bear in mind this rule as to the extent to which the evidence must go, unless we are to open the door for an invasion of the provisions which the legislature has adopted by the statute of wills and the statute of frauds. Is the proof then clear and satisfactory? The evidence is summarized in the opinion of the learned vice-chancellor, and we need not repeat it. Much of his opinion, and much of the brief of the respondents, is taken up with a discussion of the conduct of the defendant, W. Scott Jackson, in procuring the execution of a will by Louise C. Aumack, the alleged fraud-doer. This evidence is irrelevant. If, as the vice-chancellor thought, Mr. Jackson procured this will from his sister by the exercise of undue influence, the only persons wronged by his conduct were the next of kin of Louise C. Aumack. The complainants were not thereby injured since, if she had executed no will but had died intestate, they would have been excluded from the enjoyment of the property as effectually as they are by her will. If the theory of the complainants is correct, her duty was to execute a will contemporaneously with that of her husband, or, at any rate, immediately after his death, and her failure to do so

for more than two years was a fraud with which Jackson was not connected. The only difference between the case that would have been presented, if she had executed no will, and the present case is that in that event her next of kin would have been defendants and not her executor and legatees.

The case must therefore be decided without regard to any opinion that may be entertained as to the validity of the will of Louise C. Aumack. It turns entirely upon the question whether she induced her husband to leave his property to her upon her promise to devise and bequeath it to his next of kin and upon her failure to perform that promise. She was not present when her husband executed his will. He told the scrivener at the time that he had never made a will because he did not know how to leave his property, and that he guessed he would leave it all to his wife and she could do what she pleased with it; that she helped to earn it. This statement of the intent of the testator, contemporaneous with the actual execution of his will and made in the absence of his wife, is corroborated by the testimony of neighbors and acquaintances with whom he talked, and the statement that his wife helped to earn the property is corroborated by the facts. To meet this, the complainants produced evidence of statements by Selah Aumack indicating affection for some of his relatives, particularly nieces who lived near him, and statements by Louise C. Aumack after his death. His statements, however, are of the general character that might be expected, and did not indicate any settled testamentary intention. Upon the contrary, all the evidence shows that there was no settled testamentary intention on his part prior to the execution of his will. The strongest evidence produced by the complainants is an admission of Louise, after her husband's death, that he started to make a will a short time after a stroke of paralysis, but said that he had so many relatives that it hurt his head to think about them all; and that she told him not to bother about his affairs, but to make a short will, leaving everything to her and she would make a will and fix it for his relatives just as she knew he wished to have it. How she could know his wishes when he had not defined them in his own mind and was unable to do so, is incomprehensible. It is unnecessary to decide whether Mrs. Aumack would have been bound as trustee for her husband's

heirs and next of kin, in case it were established that she had assented to this undefined arrangement. The fact that Selah Aumack had never decided in what proportions he would distribute his property among his own relatives is most persuasive that no agreement had been made between him and his wife prior to the execution of his will. If he and his wife made an agreement that his relatives should have the property after her death in shares to be fixed by her, it would have been easy for him to devise and bequeath the property to his wife for her life only, and, after her death, to such of his next of kin as she might appoint. This would have avoided the difficulty which the witnesses for the complainants rely upon as an explanation of his failure to make the distribution by his own will. In view of his long and successful experience in business, we find it impossible to explain his failure to protect the interests of his next of kin, unless he meant to do exactly what he told the scrivener and what his will accomplished. The circumstances of the case sustain this conclusion: Louise C. Aumack, immediately after her husband's death, transferred the property to her own name, and, although she might have done this without the knowledge of her husband's relatives, she did more, which those of them who lived in the neighborhood must have known, for she made considerable gifts of real estate to the church and to her brother without objection on the part of any of the complainants who, if the theory of their bill is correct, were defrauded thereby. Even her admissions, as testified to by witnesses for the complainants, upon which they rely, indicate that the arrangement between her husband and her permitted her to use as much of the estate as she chose for herself so that there might not be very much left. The will of Selah Aumack was a natural expression of the wishes of a man of proper feeling. He and his wife were aged people, who had lived together many years, and who, by their joint efforts, their industry and frugality, had accumulated their fortune, and, if we assume that he was a man with the ordinary feelings of affection toward the wife who had lived with him so long and helped him so well, he would, naturally and properly, when he came to dispose of his property, leave it to her for the reason that he gave the scrivener, that she had helped earn it. The complainants do not claim that the decree

effectuates the intention of Selah Aumack. Confessedly, he did not mean to distribute his property among his heirs and next of kin in the proportions fixed by statute in case of intestacy, nor is there evidence justifying the conclusion that the legacies given by Mrs. Aumack to her husband's nieces were not exactly what he had intended. If we are to go contrary to the intention of Mr. Aumack and make an equal distribution where he intended an unequal distribution, we are not enforcing a trust, but are making a new will, which he confessedly would not have made. The evidence as to his varying intentions is contradictory. No doubt he expressed himself differently at different times as his mood varied, but the evidence does not justify us in annulling in effect a man's will supported as it is by his oral declaration of intent at the time of execution, and in finding his widow guilty of fraud, on the uncertain and contradictory testimony of neighbors after both are dead. The case differs widely from *In re Boyes, L. R. 26 Ch. Div. 531,* on which complainants rely. In that case the legatee admitted the trust.

The decree must be reversed and the record remitted to the end that a decree may be entered dismissing the bill. The defendants are entitled to costs in both courts.

*For affirmance*—KALISCH, BOGERT, VREDENBURGH, WHITE —4.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, MINTURN, CONGDON—8.