MIRIAM W. BELKNAP, executrix, &c.,

*v.*

EDWARD TILLOTSON, executor, &c., of Irene Belknap, deceased, et al.

[Submitted July 21st, 1913. Decided October 13th, 1913.]

1. A testator having made his will containing a pecuniary legacy to a niece, afterwards being unwilling that the same should become her absolute property, but desiring that she should have the income derived therefrom for life, and that after her death the same should become the property of other three named relatives designated by him, advised her that if she did not agree to make a will bequeathing such pecuniary legacy to said other three named relatives, he would add a codicil to his will or make a codicil thereto cutting her off, and she promised to make her will bequeathing said legacy accordingly, which so satisfied him that he allowed his will to remain unaltered.—*Held,* that said other three named relatives, upon the death of the testator's niece became entitled to said legacy (she having died five days after his death), which, if it came to the hands of her executor—she having failed to make her will in accordance with her promise—would be held by him under a trust arising *ex maleficio,* and her executor would be bound to pay the same to the other three named beneficiaries.

2. The contract is to be governed by the laws of this state where the testator resided, and not by the laws of Massachusetts where the niece made her promise.

3. At the time of the signing of the promise the will of the niece, duly executed, was in existence and has since been admitted to probate, which disappointed the testator's wish and violated her solemn promise. The permitting of such a will to exist was a fraud on the testator and on the three beneficiaries named in the promise. The promise of the niece having been the inducement which led the testator to leave his will unaltered, and her will having been in existence which violated her promise, her failure to alter it so as to comply with the promise, made the inducement fraudulent, and it is on this ground that equity assumes jurisdiction for preventing the statute of wills from becoming a means of fraud.

*Mr. Henry B. Twombly,* for Amelia B. Sturges, Miriam W. Belknap and Irving Belknap, deceased.

*Mr. Charles L. Cole,* for Edward Tillotson, individually, and as executor of Irene Belknap, deceased.

CASES IN CHANCERY.

GRIFFIN, V. C.

The complainant having taken a decree that the defendants interplead, the question presented for determination is, which of the two contending sides is entitled to the fund deposited in court?

The pertinent facts are as follows: Willis H. Belknap, a resident of New Jersey, died on or about September 3d, 1911, leaving his last will and testament dated January 26th, 1909, which contained the following clause:

"*Fifth.* I hereby bequeath to my niece, Irene Belknap, of Cambridge, Massachusetts, the sum of six thousand dollars."

Afterwards, on the 2d day of August, 1909, the testator made a codicil, the sole change effected thereby being to substitute his wife, Miriam W. Belknap, as executrix for the executors named in his will. The will and codicil were admitted to probate in this state. It appears that shortly after the making of the codicil the mind of the testator turned to this bequest to his niece, Irene, and on or about September 1st, 1909, he wrote, in his own handwriting, a memorandum, as follows:

"Your uncle Willis has asked me to say that in his last will that he left you $6,000—and it has recently occurred to him that you might possibly will it to someone that he is not at all interested in; to do this would be a great disappoint to him and he suggest at the proper time that you will it, equally to your aunt Amelia, and your aunt Miriam, and your brother Irving, or their survivors, or all to the survivor, should but one be living at the time of your death. I mention Irving because you seem fond of him, and his opportunities for success in life hardly equal to his brothers."

This memorandum he gave to his sister, Amelia B. Sturges, with the request that she copy the same and send it to Irene. Accordingly, on September 1st, 1909, Amelia wrote to Irene as follows:

"MY DEAR IRENE—Your uncle Willis has asked me to say that in his last will he left you $6,000 and it has recently occurred to him that you might possibly will it to someone that he is not at all interested in. To do this would be a great disappointment to him and he suggests at the proper time that you will it equally to your aunt Amelia and your aunt Miriam and your brother Irving or their survivors or to the survivor, should but one be living at the time of your death. I mention Irving because you seem fond of him and his opportunities for success in life hardly equal to his brothers.

"September 1st, 1909.                    AMELIA B. STURGES."

Irene replied by letter, dated September 2d, 1909, in which, after addressing her as "Dear Aunt Amelia," she said:

"I had a letter full under way to you yesterday, but on receipt of your letter written Sept. 1st I begin an entire new letter instead. I am so glad dear Uncle seems stronger, but sorry he does not gain as rapidly as I could wish. Please give him my love as always and say his wishes in regard to the money which he has so very, very kindly willed to me, and which I thank him many times over for, shall be respected. I promise him, so it will be all right * * *"

She then discusses a number of personal matters which have no bearing on the case. This last letter was received by Mrs. Sturges in Summit, New Jersey, on September 3d, 1909, and the contents made known to the testator.

On September 5th, 1909, Irene wrote the testator, addressing him as "Dear Uncle Willis," in which, after referring to his health, she says:

"You are very kind to remember me in your will, and I am very grateful to you and thank you many times for so doing. Your wishes by me shall be respected as to the final disposal of said $6,000 (principal) at the time of my death. Perhaps it has not occurred to you that in case of a long & serious illness of months or say several years that is liable to come to me in the future, perhaps a small sum of this amount should remain unpledged by me, as what would I do under so trying a circumstance? I make the suggestion to you—what would be your final wish in regard to it? Perhaps you and aunt Amelia had not though of this, but I am as liable as anyone to succumb to serious illness some day."

* * * * * * * *

"My love to aunt Amelia, Miriam and your own dear self. I await further instructions from you as to about legally signing a paper in regard to the $6,000. * * *

"Lovingly as always, IRENE."

This letter was received by the testator on September 6th, 1909, in Summit, New Jersey, and by his request Amelia wrote a letter in reply which, in substance, was to the effect that the testator thought that all expenditures because of sickness or otherwise to be paid by Irene ought to be paid by her from her own property, so that she might always have the income from the $6,000 to live on, and so that the principal amount might be preserved. The executor of Irene found a long series of more than twenty letters from Amelia to Irene, some dated prior to

September 6th, 1909, and some subsequent thereto, but found no such letter from Amelia as the one last above referred to.

After the date of the last-mentioned letter, Irene Belknap wrote in her own handwriting the following document:

> "I, Irene Belknap, do promise to will to 3 relatives, Amelia B. Sturges—Miriam W. Belknap—Irving C. Belknap—said principal of $6,000 left in last will of Willis H. Belknap to Irene Belknap, at the time of death of Irene Belknap.
>
> "September 9th, 1909.                    For Mr. W. H. Belknap,
>    "Swampscott, Massachusetts.              from Irene Belknap."

This she signed at Swampscott, Massachusetts, and mailed to Willis H. Belknap, in Summit, New Jersey. Thereafter William H. Belknap made no change in his will.

The foregoing facts are taken from a stipulation entered into by the parties in which is set forth a copy of the memorandum, which Willis H. Belknap wrote in his own handwriting and handed to Amelia to copy and send to Irene, a copy of the letter of September 1st, 1909, written by Amelia to Irene; a copy of the letter of September 5th, 1909, written by Irene to Willis H. Belknap; and a copy of the document signed by Irene, dated September 9th, 1909, and mailed to Willis H. Belknap.

In addition to the stipulation there was taken the testimony of Amelia B. Sturges, a sister of testator, who was eighty-four years of age, and of Miriam W. Belknap, the widow of testator, and his executrix. Mrs. Sturges says that she remembered the occasion on September 1st, 1909, when Mr. Belknap gave her the memorandum in writing which he asked her to copy and to send to Irene, and she did so; that she remembers the receipt by Mr. Belknap of the letter of September 5th, 1909, from Irene, and that Mr. Belknap, Mrs. Belknap and herself had a discussion over and with reference to it; that

> "Mr. Belknap said that in case of sickness Irene had her own money to use, and that unless she followed his wishes in regard to the $6,000 he would make a codicil to his will and cut her off entirely from his will."

He asked her to write this to Irene, but she says she cannot exactly remember whether she did or not, but her best recollec-

tion is that she did; she is almost positive that she did, but she did not keep a copy of the letter. On cross-examination she says she did not remember that anything more was said at that conversation; that she could not swear that she wrote Irene all that the testator said to her, but she did write a letter while he was standing by her, its exact contents she could not state. She sent the letter by mail, and knew that Irene had received it, for she answered it. She further said that the portion of the letter to Irene relative to her sickness was discussed, and it was said that she had enough money of her own, and she could use the interest on the $6,000, and that she could not use the $6,000; they thought that she could not spend all of her own money; they did not discuss the question of what would happen after she spent all of her own money.

On redirect she says:

"I am pretty positive I did write the letter to Irene in which I wrote what Mr. Belknap said to me about the $6,000; I haven't a doubt of it but couldn't swear to it; that is my best recollection."

Miriam W. Belknap also testified that she remembered the occasion on September 1st, 1909, when her husband gave the memorandum to Mrs. Sturges and asked her to write it to Irene; that she was present at the conversation; that she remembers the receipt by Mr. Belknap of the letter of September 5th, 1909, from Irene, and the discussion over it between Mr. Belknap, Mrs. Sturges and herself. She says:

"Mr. Belknap said to Mrs. Sturgess 'Tell Irene she can use her money in case of sickness, and that if she doesn't comply with my request I shall put a codicil to my will,' to what effect he did not say."

She says that Mrs. Sturges was at her desk writing a letter to Irene, and she was sitting in the room when Mr. Belknap came in and stood by her and told her to write the above in her letter to Irene; and she says:

"I recall that a letter was afterwards received in which a sentence is included, in substance, 'Tell Uncle Willis that everything will be all right and I will do as he wishes me to do.'"

This testimony was taken *de bene esse* by consent, subject to all legal objections, and certain objections were made by counsel for Edward Tillotson as executor. This testimony adds to the stipulation as new matter only the statement which Mrs. Sturges made as to what transpired after the letter of September 5th was received, as follows:

"Mr. Belknap said that in case of sickness Irene had her own money to use and that unless she followed his wishes in regard to the $6,000 he would make a codicil to his will and cut her off entirely from his will."

And the statement of Mrs. Belknap, as follows:

"Mr. Belknap said to Mrs. Sturges 'Tell Irene she can use her own money in case of sickness and that if she does not comply with my request, I shall put a codicil to my will,' to what effect he did not say."

A letter containing substantially this matter was written by Amelia to Irene, Mr. Belknap then and there dictating while she wrote, and the same was mailed to Irene.

The portion of the testimony above referred to is admissible to show what was written by Amelia to Irene by direction of the testator, the same having been received by her as evidenced by her subsequent letter that was lost, and the promise of September 9th. *Williams* v. *Vreeland, 32 N. J. Eq. (5 Stew.) 737.*

The objections to the other testimony as to conversations between the testator, Mrs. Belknap and Mrs. Sturges are sustained, because it does not appear that the subject-matter was made known to Irene.

The testator died on the 3d of September, 1911, at Summit, county of Union, State of New Jersey, without having changed his will or codicil.

Irene Belknap died in or near Salem, in the State of Massachusetts, on the 8th day of September, 1911, five days after the death of Mr. Belknap, at the age of forty-seven years, leaving her last will and testament dated the 13th day of October, 1908, which was admitted to probate in Massachusetts, and the defendant Edward Tillotson was appointed executor. In and by her will she gave to her friend, said Edward Tillotson, $9,000 in cash, considerable jewelry, and all the residue of her estate, ex-

cepting certain bequests, among which are bequests to Amelia Belknap Sturges, Willis H. Belknap and Irving C. Belknap, of $500 each, and to Miriam W. Belknap her five-stone diamond ring. This will was made prior to the will and codicil of Willis H. Belknap. It does not appear that she executed any will in conformity with the wishes expressed by Willis H. Belknap, or as contained in her promise of September 9th, 1909, or the several letters above mentioned. Hence this suit.

Counsel for Mr. Tillotson, individually, and as executor, insists that the money should be paid to him for the following reasons—*first,* there was no intention to make a contract; *second,* even if the parties intended to make a. binding contract, they have not done so because there was no consideration; *third,* because the case is governed by the Massachusetts law, and the memorandum of September 9th is not sufficient under the Massachusetts statute of frauds.

The situation in this case is as follows: The testator having made his will containing a legacy of $6,000 to Irene Belknap, afterwards being unwilling that the same should become her absolute property, but desiring that she should have the income derived therefrom for life and after her death the same should become the property of the three-named relatives, advised her that if she did not agree to make a will bequeathing this $6,000 to said relatives, he would add a codicil to his will or make a codicil to his will cutting her off. Accordingly, in compliance with his desire, she executed the promise of September 9th, 1909, which so satisfied him that he allowed his will to remain unaltered.

I do not regard the testimony of Mrs. Belknap or Mrs. Sturges as to the conversation leading to the writing of the letter of September 6th, and the statements of its contents, as particularly essential to the conclusion reached. It may be treated as cumulative. The other communications sent to Irene, with her replies and the promise of September 9th, sufficiently comply with the requirements of the decisions to constitute a sufficient binding promise on the faith of which the testator did not change his will. That a letter in reply to Irene's of the fifth to the testator was written on September 6th, containing sub-

stantially what was testified to, omitting the threat to execute a codicil, is admitted by the stipulation, and thereafter the promise of September 9th was written and mailed to testator, apparently in compliance with the desire or demand of the testator contained in his letter of September 6th. It is perfectly apparent that the parties had a complete understanding, that Irene well knew the views of the testator. and wrote her promise accordingly. It was not necessary for the testator to make a threat; he was making a gift, and the very close relationship of the parties rendered a mere suggestion of the desire of the testator, when acquiesced in, sufficiently binding.

Mr. Tillotson, however, argues that the testator merely suggested that she make her will in the manner indicated, but did not intend to bind her to do so. This theory seems to be negatived by the course of the correspondence, beginning with September 1st, letters were sent and answered promptly until the 9th of September, when the promise of Irene was mailed, which terminated all further communication between the parties on the subject.

On the foregoing case stated, Mrs. Amelia Belknap, Amelia B. Sturges and Irving Belknap, upon the death of Irene Belknap, became entitled to said legacy which, if it had come to the hands of her executor—she having failed to make her will in accordance with her promise—would be held by him under a trust arising *ex maleficio,* and he would be bound to pay the same to the three beneficiaries above named. *Heinisch* v. *Pennington, 73 N. J. Eq. (3 Buch.) 456; S. C. on appeal, 75 N. J. Eq. (5 Buch.) 606; Williams* v. *Vreeland, 32 N. J. Eq. (5 Stew.) 135; S. C. on appeal, 32 N. J. Eq. (5 Stew.) 734; Yearance* v. *Powell, 55 N. J. Eq. (10 Dick.) 577; Duvale* v. *Duvale, 56 N. J. Eq. (11 Dick.) 375; Carver* v. *Todd, 48 N. J. Eq. (3 Dick.) 102.*

In my view, the facts and the law applicable thereto above stated, fully answer the first and second points urged by Mr. Tillotson.

As to his third point, viz., that the contract is governed by the laws of Massachusetts, under which laws the memorandum of September 9th is not sufficient under the statute of frauds:

I have not considered it necessary to pass upon the status of the case under the Massachusetts laws, because of the conclusion reached that the case must be governed by the law of this state. The determination of the testator to permit his will to stand was not reached until he received in this state the letters and written promise constituting the agreement to comply with his wish, which amounted to an inducement not to alter his will. Assuming for the sake of argument that there were mutual contractual relations, the presumption arises that the parties intended to make a binding contract and neither meant to mislead the other. *Mayer* v. *Roche, 77 N. J. Law (48 Vr.) 681, 684.*

Therefore, if Irene wrote her promise in Massachusetts, in a manner which rendered it void under the laws of that commonwealth, and the contract was to be governed by such laws, she at least practiced a constructive fraud on the testator which would not entitle her executor to consideration in this court. This question, however, is not involved in this case.

The testator did not promise that he would not change his will in the item that was in her favor in consideration of her promise to make her will in accordance with the promise. The testator by his will was making a gift to Irene. He had the right to change, alter or revoke it at any time. He did not bind Irene to give up any part of her estate. What he did was simply to say: "I have made my will, giving to you a legacy of $6,000. I want you to agree that if you receive this legacy you will, upon your death, leave a will which will give this $6,000 to my wife, sister and your brother. If you do not so promise, I will alter my will." And she accordingly signed a promise, agreeing to will to the parties named "said $6,000 left in the last will of Willis H. Belknap to Irene Belknap at the time of the death of Irene Belknap."

It is perfectly clear that if the testator had altered his will, eliminating this legacy, the estate of Irene would incur no liability on her promise.

At the time of the signing of the promise, the will of Irene, duly executed, was in existence, and has since been admitted to probate, which disappointed the wish of the testator and violated her solemn promise. The permitting of such will to exist

was a fraud on the testator and on the beneficiaries named in the promise. The promise of Irene having been the inducement which led the testator to leave his will unaltered, and her will being then in existence which violated her promise, her failure to alter the same so as to comply with the promise, made the inducement fraudulent, and it is on this ground that equity assumes jurisdiction for the purpose of preventing the statute of wills from becoming a means of fraud. The remedy is not by way of specific performance of a contract, and a personal decree for performance and relief based on such grounds would seem to clearly disregard the statutes both of fraud and wills. Vice-Chancellor Emery in *Heinisch* v. *Pennington, supra.* The fraudulent inducement having become effective only upon the receipt by the testator in New Jersey of the promise of September 9th, the case is governed clearly by the New Jersey law.

The failure to revoke this will and make another which would satisfy the terms of her promise was probably due to her procrastination. A willful intent to violate her promise can hardly be imputed to her. The very close friendly relations existing between the parties and their ties by blood and marriage would seem to negative such a thought.

Nevertheless, her breach of the trust and confidence reposed in her, however unintentional, cannot be permitted to augment her estate to the detriment of those for whose benefit the promise was exacted.

I am, therefore, of the opinion that this fund, in equity, is the property of Mrs. Belknap, Mrs. Sturges and Irving C. Belknap, and will advise a decree that the fund be paid accordingly.