99 N.J. Super. 500 (1968)
240 A.2d 453
IN THE MATTER OF THE ESTATE OF THORNTON C. LAND, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided February 16, 1968.
*502 Messrs. Milton, Keane & De Bona, attorneys for plaintiffs (Mr. John Milton, Jr., appearing).
Messrs. Sullivan & Sullivan, attorneys for defendant Marjorie Land Largey (Mr. Arthur J. Sullivan, Jr., appearing).
Messrs. Meth & Wood, attorneys for Theodore Sager Meth, guardian ad litem of Tyler Land and of the unborn children of Thornton R. Land and Michael S. Land (Mr. Theodore Sager Meth appearing).
*503 HERBERT, J.S.C.
Plaintiffs are Thornton R. Land and Michael S. Land, sons of Thornton C. Land, and are named as beneficiaries in the residuary clauses of their father's will. The will is dated June 19, 1964 and, following Mr. Land's death on May 13, 1965, was probated June 16, 1965 in the office of the Surrogate of Essex County. The estate consists of New Jersey realty having an estimated value of $30,614 and a very substantial total of personal property.
Plaintiffs sue for a judgment declaring that (a) each of them is entitled to receive, free of trust, the benefits provided by the father's will, and (b) Marjorie Land Largey, their sister, holds in trust for each of them and for herself the proceeds of an annuity policy, purchased by the father in July 1964.
The question of a trust on testamentary benefits arises because plaintiffs, while their father was alive, executed documents which purport to be trust agreements. The one signed by Thornton R. Land is undated and was not signed by Thornton C. Land, the trustee named in it. If there were no other obstacles to the effectiveness of this undated document as an express trust, the trustee's failure to sign would create serious doubts about it because of the following provision:
"6. This trust shall become operative on the date of the Trustee's acceptance of the foregoing appointment, indicated in writing at the foot of this document, and, insofar as applicable, retroactively as of the date of my majority."
The trust documents signed by Michael S. Land bear the dates of May 8 and July 28, 1964. They both contain the same paragraph about trustee's acceptance as is quoted above, and they were both endorsed "Accepted" by Thornton C. Land as trustee. All three papers contain this sentence:
"The laws of New York shall govern the construction and execution of this trust."
*504 The trust instrument signed by Thornton R. Land and the first of the two signed by his brother Michael contain (except for the name of the signer) initial paragraphs which are identical and read as follows:
"I, [signer's name], hereby transfer to my Trustees named herein all my right, title and interest in the property of Arthur Harold Land, and of Nellie C. Land, and all my right, title and interest as the child, issue or descendant of my parents, or otherwise, in any and all property, including future and contingent interests, to which I am now or may hereafter become entitled, and all my right, title and interest in any property hereafter deeded or transferred to me by my parents and their relatives, TO HAVE AND TO HOLD said property and all property I may hereafter transfer or cause to be transferred to said Trustees, for the following uses and purposes:"
In the second trust agreement signed by Michael the initial paragraph was changed, but only to exclude any property "received in the future from my mother Margaret E.R. McCampbell" (former wife of Thornton C. Land).
The paragraph quoted above is worded as though it were primarily an immediate transfer of existing property rights, but at the time of signing it could have had no force as an assignment except insofar as it might affect expectancies of receiving property. The two young men were then students, were not self-supporting and owned nothing of substantial money value. Neither was paid any consideration in connection with the signing of the trust papers, and when each signed, his possibility of becoming a legatee could have been nothing more than a hope.
Directly involved here are property rights  benefits provided by the father's will  which came into existence after the trust documents were signed. The question is whether the executor of Thornton C. Land should pay over those benefits free of trust to Land's sons or should they go to trustees to be held and administered under the trust instruments. Only the guardian ad litem opposes payment free of trust. If the trusts were to come into existence, the children of Michael and Thornton R. Land would become *505 remaindermen; hence the guardian's standing to urge that the trust agreements be given effect.
He does not argue, however, that they should be enforced as express trusts, or as contracts to create trusts. In that respect his position is consistent with the authorities. Concerning a situation like the ones presented here, Professor Scott has written (1 Scott on Trusts (3d ed. 1967), § 86.1, p. 718 et seq):
"Where there is consideration it makes little difference whether the transaction is treated as a present assignment or as a contract to assign in the future. Where there is no consideration, however, a purported assignment, whether by way of outright gift or in trust, or a purported declaration of trust, cannot be upheld as a contract. If the transaction is not effective as a present assignment or declaration of trust, it cannot be upheld as a contract. Where the settlor has no property interest he cannot make a present transfer, and a mere expectancy is not such an interest. The courts have held, therefore, that a purported assignment in trust or declaration of trust by an heir or legatee of what he may thereafter receive by intestate or testate succession, if made gratuitously, is ineffective.
In In re Ellenborough [(1903) 1 Ch. 697] a woman without consideration executed a deed purporting to grant to trustees the real and personal estate to which on the death of her brother and sister she might become entitled under their wills or by intestacy. The sister died and she received a share of her estate and handed it over to the trustees. The brother later died and she became entitled to all his property but she refused to transfer it to the trustees, and took out a summons to determine whether she was entitled to retain the property. The court held that her deed could not operate as a present conveyance and that although in equity it might operate as an agreement to convey, she was not bound by it since she received no consideration, and that she was therefore entitled to retain the property.
In Matter of Gurlitz [105 Misc. 30, 172 N.Y.S. 523 (Sup. Ct. 1918), Modified sub nom. In re Lynde's Estate, 175 N.Y.S. 289 (Sup. Ct. 1919), affirmed 190 App. Div. 907, 179 N.Y.S. 933 (App. Div. 1919)] a man executed an instrument under seal whereby he purported to assign to a trust company as trustee for another his interest under a trust created by his grandfather. The assignment was gratuitous. His mother was a beneficiary under the trust created by his grandfather but he was not. His mother later died bequeathing all her property to him. It was held that nothing passed *506 under the assignment to the trust company. The court held that at the time of the assignment it could not operate to pass any interest because at that time the assignor had no interest. It could not be enforced as a contract to assign the property when received since there was no consideration for it. The court said that it could not be upheld as a declaration of trust, not only because it was not so intended, but also because at that time the settlor had no interest which he could hold in trust."
Although not arguing for express trusts or enforceable contracts, the guardian ad litem does contend that constructive trusts should be imposed upon all property devised and bequeathed to Thornton R. Land and Michael S. Land by their father's will, the features of those constructive trusts to be determined by applying the provisions of the purported trust agreements. The general proposition on which the guardian rests his contention has been stated in 1 Restatement, Trusts, 2d, (1957), § 55(1), p. 139 (1957):
"Where a testator devises or bequeaths property to a person in reliance upon his agreement to hold the property in trust, the devisee or legatee holds the property upon a constructive trust for the person for whom he agreed to hold it."
Professor Scott is critical of this rule pointing out that it permits a testator, without complying with the statute of wills, to make what is really a testamentary disposition to the cestui of the constructive trust. Scott on Trusts (3d ed. 1967), § 55.1, pp. 424-426. However, our courts have recognized and applied the rule, and have done so where the wills  as in the present case  contained only outright gifts and made no mention whatever of any trust. A leading case is Williams v. Vreeland, 32 N.J. Eq. 135 (Ch. 1880), affirmed 32 N.J. Eq. 734 (E. & A. 1880). To the same effect see Yearance v. Powell, 55 N.J. Eq. 577 (Ch. 1897); Belknap v. Tillotson, 82 N.J. Eq. 271 (Ch. 1913), and Sick v. Weigand, 123 N.J. Eq. 239 (E. & A. 1938).
It has been declared that in cases of this type the proof on which a constructive trust is to be based must be clear and convincing. Williams v. Vreeland, supra, 32 N.J. *507 Eq., at p. 737; Aumack v. Jackson, 79 N.J. Eq. 599, 600 (E. & A. 1912). Here there is no uncertainty about the existence or terms of agreements to put property in trust; the purported trust documents show exactly what each of testator's sons did toward making such an agreement. Proof of reliance by Thornton C. Land upon the papers his sons had signed is quite another matter. I am satisfied that the record before me would not justify, as to either son, a finding of reliance by the father, and such a finding is essential to the imposition of constructive trusts.
I have already noted that Thornton C. Land did not endorse his acceptance as trustee upon the trust agreement signed by his son Thornton R., even though the document by its terms was to "become operative on the date of the Trustee's acceptance * * *." His failure to sign indicates a considerable indifference toward the paper, and does not reflect the attitude of a man who meant to rely on it. Neither before or after Thornton R. Land signed did his father have any talk with him about what the father would or would not provide for him by will. There was no sort of communication from the father which directly or indirectly told the son that the father would rely on the agreement in disposing of his estate.
In Michael's case the discussion between him and his father preceding the signing had included talk by the father about disinheriting Michael if he did not sign. That is an indication of reliance. However, when Mr. Land visited his daughter Marjorie in Massachusetts on May 10, 1964  her birthday  he mentioned the trust agreements and told her that they were worth only the paper they were written on. In July 1964 Michael's trust agreement was rewritten with a change which appears somewhat significant for present purposes. The effect of the change was to exclude expressly any property that Michael might receive from his mother. Michael seems to have initiated this change, but the significant thing is that no corresponding change was made in the agreement of Thornton R. Land. Yet the proofs *508 show that Mr. Land had always treated his three children equally in other respects. He had made substantial gifts to them that were approximately equal in value. He had created for each of them Totten trust accounts of approximately the same size in New York savings banks. The terms of his will provide equal treatment for all three. In the summer of 1964 Michael was 22 and his brother 23. The daughter was older than they, and her father considered her more mature and better established. Thus, he had good reason for not considering a trust with respect to her share of the estate. But there seems to have been no reason why a man who really was serious about the shares of his sons being held in trust would not have followed his overall principle of equal treatment by excluding property acquired from the mother from the purported trust agreement of Thornton R. Land.
I also have in mind that Thornton C. Land was a successful lawyer, a member of the bar of New York and of the bar of New Jersey. He was actively practicing as a member of one of the largest and best known law firms of New York City. Though he was not a specialist in the law of wills, trusts and estates, he undoubtedly had partners and associates expert in these fields who were readily available to answer any questions he might have been unable to answer for himself.
The testimony of Mr. Land's former secretary shows that in the preparation of the trust agreements he had the help of the late Emily Marks, a New York lawyer who was a friend of his and who frequently helped him with research problems. There is no way of knowing whether she was aware that an expectancy of receiving property cannot be the subject matter of an express trust; and except for the remark to his daughter about the trusts being worth only the paper on which they were written, there is nothing in the record to show the actual state of Mr. Land's legal knowledge on the point. Nevertheless, to assume that a busy and successful lawyer of long experience erroneously thought *509 the trust agreements signed by his sons were valid and enforceable, and therefore relied upon them when he omitted from his will any and all trust provisions in relation to the residuary gifts to the sons, would seem to be less logical and sensible in this context than to assume that he was serious when he spoke to his daughter about the worthlessness of the trusts and that he knew they were not enforceable and therefore he did not rely on them when he made his will. There is, of course, the possibility that he knew the trust agreements were unenforceable as express trusts but thought they could be effective as constructive trusts and therefore counted upon them. That is a possibility I cannot take seriously, for I find it hard to believe that a testator  especially a lawyer  if his desire really was to have his estate, or parts of it, held in trust, would choose to depend upon a doctrine of constructive trust law with its inherent and fairly strong suggestion of litigation to come, rather than to provide trusts in his own will.
It appears to me that the purported trust agreements signed by the sons were not the sort of thing that a lawyer would rely upon unless he could be charged with a degree of ignorance of the law which in this case would be more out of character than in character. My view is that the father probably regarded the trust agreements merely as restraining influences upon two sons whom he thought of in 1964 as being immature. He knew they might receive substantial amounts under the will of his wealthy and childless cousin Arthur Harold Land, and if they had come into property in this manner before being experienced enough, in the judgment of their father, to handle it, he would have been able to use the signed trust agreements as a basis for insisting that all their benefits under the will of A.H. Land should be paid over to him as their trustee. The fact that he was designated as the sole trustee in Thornton's trust agreement and in Michael's earlier one suggests that he was thinking of the agreements as a device for exercising some control while he lived over property coming to his sons *510 from a source other than his own estate, that estate being something which he could dispose of in trust or free of trust by his own will, as he might see fit. Whatever his state of mind may actually have been, the proofs do not convince me that he relied on the trust agreements when he made his will on June 19, 1964, and thereafter allowed it to continue unchanged. Failure of proof of reliance eliminates a necessary element of the factual base on which a constructive trust would have to rest.
Thornton R. Land and Michael S. Land are each entitled to receive free of trust from the executor of their father's estate the full benefits provided for them by the terms of the father's will.
The remaining question concerns the disposition of the proceeds of an annuity. On July 4, 1964 the Paul Revere Life Insurance Company of Worcester, Massachusetts, issued to Thornton C. Land a policy described as a single premium monthly installment refund annuity policy. In return for a consideration of $200,381 the insurance company guaranteed a monthly payment of $1,173 for 171 months. Should the annuitant die before the termination of this period (as he did), payments were to be made to "Marjorie Land Largey, Daughter of the Annuitant," named as beneficiary in the policy.
On July 30, 1964 the decedent wrote the following letter to his daughter:
"I made you the beneficiary of my annuity policy so if anything is due when I leave this vail of mortal tears you will receive the complete amount.
I would suggest that if it is convenient you give one-third of what you receive, if anything, to Thorntie, and one-third to Michael, using your judgment as to which of the two receive the amount, when and how.
I have given it to you so that it will not be a part of my estate, and it will go to the three of you children primarily.
*511 I will send you the $00 I discussed before the 1st of September.
Best love,"
A little earlier Mr. Land had mentioned to Mrs. Largey his plan to purchase an annuity but had not dealt with any details about payment. When she received the letter she read it and put it away. She did not reply to it, and apparently thought no reply was called for.
Mrs. Largey was designated as beneficiary on the face of the policy. On the second page in the printed text was a provision reserving to Mr. Land the right to make future changes of beneficiary. However, by a paper which is dated July 17, 1964 and entitled "Irrevocable Nomination of Beneficiary," Mr. Land affirmed the nomination of his daughter as beneficiary under the policy and agreed "that such nomination be irrevocable during the lifetime of my said daughter." Both he and Mrs. Largey signed this paper. She apparently had no recollection of doing so, for she did not mention it in her testimony. Whether she signed before or after receiving her father's letter appears to be unimportant. The paper naming her beneficiary irrevocably was not filed with the insurance company until August 13, 1964, two weeks after the letter was written, and the policy calls for designations of beneficiary to be "in writing on a form satisfactory to and filed with the Company at its Home Office."
Although the second paragraph of the letter of July 30 contains precatory language, Mrs. Largey testified that it was her father's custom to state what amounted to a direct command in polite language. She testified further that, knowing her father, she took the letter as a command. She, therefore, takes the position that the proceeds should be impressed with a trust to carry out what she considers her father's intent that the policy proceeds should be for the benefit of all three children.
Counsel for plaintiffs contend that the letter created an express trust of the proceeds, Mrs. Largey being the trustee *512 and all three children beneficiaries, with discretion in the trustee as to the disposition of the trust property. Mrs. Largey's attorney argues for a constructive trust.
It is my conclusion that, taken together, the policy and the letter satisfy the requirements of an express trust. As with any inter vivos gift in trust where the settlor and trustee are not the same person, there must be a transfer of trust property to the trustee. Scott on Trusts (3d ed. 1967) § 32.2, p. 266. In the typical insurance trust this requirement is satisfied by the designation of the trustee as beneficiary of the policy. Bose v. Meury, 112 N.J. Eq. 62 (Ch. 1932). Scott, op. cit., § 57.3, pp. 493, 497. The obvious difference here is that Mrs. Largey, though named as beneficiary, was not designated as a trustee in the policy. She therefore cannot be said to hold those proceeds under an express trust unless it can be held that upon the receipt of the July 30 letter from her father (1) an express trust was sufficiently declared and (2) her implied designation as trustee in the letter had the effect of placing in trust property consisting of her legal rights as beneficiary of the policy.
As to the first requirement, I find that taken as a whole the letter does spell out Mr. Land's intention that Mrs. Largey hold the annuity proceeds for the benefit of her brothers as well as herself. This is a necessary result in light of the third paragraph which reads as follows:
"I have given it to you so that it will not be a part of my estate, and it will go to the three of you children primarily."
By this decedent indicated that what appeared to be precatory language in the letter's preceding paragraph was in fact a polite command to his daughter. Corroborating this conclusion is the testimony of witnesses who told of decedent's expressed intentions that all three children were to share in the annuity proceeds.
Remaining, then, is the determination as to whether the manifestation of intention to make a present declaration *513 of trust was implemented by a present transfer of trust property. The subject matter of an insurance trust is the promise by the insurer to pay the proceeds to the beneficiary named in the policy. Bose v. Meury, supra, 112 N.J. Eq., at page 64; 3 Bogert, Trusts and Trustees (2d ed. 1965), § 142, p. 10. In this case the potential trust res was in existence when Mr. Land's letter was written, the issuance of the policy having taken place almost four weeks earlier. It is my conclusion that the obligation of the insurance company to pay, qualifying as the subject matter of the trust, was transferred from Mrs. Largey, beneficiary, to Mrs. Largey, trustee, when she received the letter of July 30, 1964 and accepted it as a command from her father.
No New Jersey case precisely in point has been found, but West Jersey Trust Co. v. Read, 109 N.J. Eq. 475 (Ch. 1932), supports the proposition that an express trust of insurance proceeds can be based entirely on an agreement between the insured and the beneficiary named in the insurance policy to hold the proceeds for the benefit of third parties, in that case creditors of the insured. Though Mrs. Largey did not communicate her assent to her father during his lifetime, her silent acquiescence and her continued willingness to be bound by her father's directive qualify as an agreement sufficient to bring this case within the holding of the West Jersey Trust Case. Nearly in point is Palmer v. MacDougall, 14 App. Div.2d, 580, 218 N.Y.2d 385 (App. Div. 1961). There the insured, a young attorney, named his mother as beneficiary of life insurance policies. At a later date he told her:
"I want to be sure that my kids have a chance at a profession, if they want it, and I think you are the one that will see to it."
His two infant children were in the custody of plaintiff, who was their mother and the divorced wife of the insured. The beneficiary consistently acknowledged her intent to use the funds for the children. On these facts the New York court *514 determined that there should be a judgment providing for execution of a trust agreement by the grandmother of the children. The opinion makes no mention of a choice between express trust and constructive trust theory, but does make it clear that the insured's stated intentions were the controlling factors rather than possibilities of unjust enrichment if the insurance proceeds should be held free of trust.
My conclusion in favor of an express trust, rather than a constructive trust, is probably unimportant as a practical matter. The established principles of constructive trust law which govern legacies and devises given in reliance upon an agreement, not supported by consideration, to hold the subject matter in trust (1 Restatement, Trusts 2d, § 55(1), p. 139) should be just as applicable  and with the same result  to dispositions of life insurance benefits made in reliance upon agreements to hold the policy proceeds in trust; and with insurance policies no problem of the statute of wills is involved. On the facts, I am satisfied that Mr. Land relied upon his letter of July 30, 1964 to his daughter, and thus, if mistaken in the view that an express trust was created, I would conclude that a constructive trust should be declared. I have been informed that Mrs. Largey has elected to receive periodic installments from the insurance company. Amounts already received by her are, of course, subject to the trust, as are rights to receive future installments. Mr. Land's letter is worded to give Mrs. Largey discretion about when and in what amounts benefits should be paid over to her brothers, but during the course of the trial she was asked whether she was willing to have Michael and Thornton share equally with her in the proceeds of the annuity policy and her answer was, "It is my only wish." That answer strongly suggests a prior decision on her part to exercise the discretionary powers conferred by her father in favor of an equal distribution, both as to time and amounts, to all three of the beneficiaries. I will so construe it, but if Mrs. Largey did not in fact mean to indicate that she has made such a decision, she can so inform me through her counsel.
*515 Taking the view that the decision has been made, it appears that Mrs. Largey as trustee now can terminate the trust with propriety by paying over to each of her brothers one-third of the total of the policy payments which she has already received from the insurance company and by assigning to each brother, with such formalities as are approved by the insurance company, the right to be paid one-third of each of the installments which are yet to come. Scott, op. cit., § 70, p. 665; Supreme Lodge, K. of P. v. Rutzler, 87 N.J. Eq. 342 (E. & A. 1917).